2023 IL App (2d) 220084
No. 2-22-0084
Opinion filed June 29, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-2247 |
| MARISOL ARRENDONDO, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Marisol Arrendondo, was found guilty of two counts of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2018)), one count of resisting or obstructing a peace officer (*id.* § 31-1(a-7)), one count of aggravated fleeing or attempting to elude a peace officer (aggravated fleeing) (625 ILCS 5/11-204.1(a)(2) (West Supp. 2019)), and one traffic violation. The trial court sentenced her to 18 months of conditional discharge, with 100 hours of community service, and imposed various monetary assessments. On appeal, defendant contends that (1) she was not proved guilty beyond a reasonable doubt of aggravated fleeing in the manner that the indictment alleged, and, alternatively, her conviction of aggravated fleeing must be vacated because it violates the one-act, one-crime doctrine; and (2) her conviction of resisting

or obstructing a peace officer must be vacated because it violates the one-act, one-crime doctrine. We affirm in part and vacate in part.

¶ 2                                    I. BACKGROUND

¶ 3     Late in the evening on November 8, 2019, Aurora police officer Julio Avila observed defendant commit a traffic violation. Avila activated his squad car's overhead lights and followed defendant for several blocks until she eventually pulled into a grocery store parking lot. Avila approached defendant's vehicle, spoke with her, and obtained her driver's license. Avila asked defendant several times to roll her window down completely and exit the vehicle. When defendant refused to do so, Avila put his arm in the window in an attempt to open the door. Defendant raised the window and drove away, injuring Avila's arm. Defendant was later arrested at her home.

¶ 4     On June 16, 2020, defendant was indicted on four felony charges related to the incident. (In addition to the felony charges, defendant had been issued two traffic citations: one for improper passing (case No. 19-TR-52595) and one for speeding (case No. 19-TR-52596). The traffic violations are not at issue in this case.)

¶ 5     Count I of the indictment charged aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2018)), alleging that "defendant[,] while committing a battery, *** knowingly caused bodily harm to Officer Avila, in that said defendant struck and/or trapped the arm and/or body of Officer Avila in the window of a vehicle knowing Officer Avila to be a peace officer performing his official duties."

¶ 6     Count II charged aggravated battery (*id.*), alleging that

> "defendant[,] while committing a battery, *** knowingly made contact of an insulting or
>
> provoking nature with Officer Avila, in that said defendant struck and/or trapped the arm

and/or body of Officer Avila in the window of a vehicle knowing Officer Avila to be a peace officer performing his official duties."

¶ 7    Count III charged resisting or obstructing a peace officer (*id.* § 31-1(a-7)), alleging that "defendant knowingly resisted the performance of Officer Avila of an authorized act within his official capacity, that being the arrest of the defendant, knowing Officer Avila to be a peace officer engaged in the execution of his official duties, in that the defendant trapped the arm and/or body of Officer Avila inside a car window while attempting to drive away, thereby causing injury to the body of Officer Avila, said resisting was the proximate cause of said injury to Officer Avila."

¶ 8    Count IV charged aggravated fleeing (625 ILCS 5/11-204.1(a)(2) (West Supp. 2019)), alleging that "defendant knowingly drove a vehicle and willfully failed to bring [her] vehicle to a stop after having been given an [*sic*] visual or audible signal by a peace officer, and while doing so caused bodily injury to Officer Avila."

¶ 9    The matter proceeded to a bench trial. Avila testified that, on November 8, 2019, at about 11:24 p.m., he was in his marked squad car, wearing his police uniform and traveling south on Union Street in Aurora. As he approached the intersection of Union Street and Galena Boulevard, the traffic signal for Union Street turned red. As the traffic on Galena Boulevard proceeded through the intersection, Avila observed a red Mustang, traveling west on Galena Boulevard, pass an SUV in a no-passing zone. Avila observed the Mustang enter the oncoming lane before returning to its lane.

¶ 10    Avila testified that, upon seeing the Mustang pass the SUV, he activated his vehicle's emergency lights and followed the Mustang, but the Mustang did not slow down. Avila reached a top speed of 59 miles per hour. After following the Mustang for about five seconds without seeing

any indication that the Mustang was going to stop, Avila activated his vehicle's siren. However, the Mustang still did not immediately pull over. After traveling an additional three blocks, the Mustang turned into a grocery store parking lot, and Avila parked behind it.

¶ 11     Avila approached the Mustang and asked the driver, later identified as defendant, to lower her window, which was partially open. Avila wanted the window down to prevent his flashlight from reflecting off it and impacting his vision and to enable him to smell any odors coming from the vehicle. After Avila asked defendant about six or seven times to completely lower the window, defendant lowered it about "85 percent." Defendant gave Avila her driver's license and proceeded to look for her insurance card.

¶ 12     Avila told defendant why he stopped her, and he asked her to exit the vehicle. Defendant refused. Avila repeated his request several more times and advised defendant that, if she did not comply, he was going to arrest her for obstructing. As Avila put it, "[his] arm entered the vehicle in an attempt to open the door so [he could] remove [defendant]." While Avila's arm was in the vehicle, "defendant raised the window and locked [Avila's] arm in between the door and the window frame." Avila testified that his arm was "[t]rapped." Defendant said, "I'm sorry, officer, I had [*sic*] to go; I can't stay here." She placed her vehicle in drive and drove away, telling Avila that she was going to the "APD," which, according to Avila, meant the "Aurora Police Department." As defendant drove away, Avila "stood still and the pressure of the vehicle driving away freed [his] arm." Afterward, Avila had "scrapes alongside [his] arm," and his arm felt "[s]ore." According to Avila, defendant never went to the Aurora police station.

¶ 13     Avila's squad car was equipped with a forward-facing camera, which recorded the incident. Avila identified People's exhibit No. 1 as the DVD containing that recording. The video, which is just under five minutes long, was played for the court. As the video begins, Avila approaches and

turns onto Union Avenue and then approaches the intersection with Galena Boulevard. At the 0:28 mark, a red Mustang travels west through the intersection behind an SUV. Avila turns right onto Galena Boulevard, and at about the 0:38 mark, he activates his overhead lights. He follows behind defendant, and at the 0:50 mark, he activates his siren. At the 1:00 mark, defendant pulls into the grocery store parking lot.

¶ 14    The video shows that, after Avila pulls his squad car behind defendant's vehicle, at about the 1:40 mark, he and another officer approach defendant's vehicle. Avila knocks on the driver's window and asks defendant multiple times to "lower [her] window more." When Avila tells defendant why he pulled her over, she explains that the SUV in front of her did not proceed when the light turned green and that the driver was sleeping. When Avila asks defendant why she did not pull over when he first activated his overhead lights, she states that Avila "just pulled [her] over at the light" and that she "parked in a safe area where [the officer] wouldn't get hit." As defendant is looking for her insurance card, Avila and defendant continue to discuss why she did not pull over. Defendant also attempts to explain why she passed the SUV. As she is doing so, at the 3:24 mark, Avila asks defendant to exit the vehicle, and she says, "No, Officer, no. I didn't do anything wrong." At this point, an officer is standing with Avila, and another officer is standing at the passenger window. Defendant tells Avila that she is going to call "the department." Avila advises defendant that, if she does not exit the vehicle, she will be arrested for obstruction. Avila repeatedly asks defendant to exit the vehicle and advises her that, if she does not do so, he will remove her. Defendant tells Avila that he is "making [her] very uncomfortable." Avila tells her he is "gonna break [her] window." At this point in the video—the 3:52 mark—Avila's body is blocked from view by another officer. It is not clear whether and how far Avila's arm enters the vehicle. At the 3:54 mark, defendant drives away and yells out, "I'll meet you at APD." Avila walks toward

his vehicle and states he is "not gonna pursue." Avila also states, "She basically took off on me. Damaged my arm a little bit. I'm okay, though."

¶ 15    On cross-examination, Avila testified that he did not recall whether defendant was holding her phone during their interaction. His arm was in the window up to the middle part of his bicep. He was attempting to unlock the door and did not make contact with defendant. He also grabbed the window to break it, if necessary. Avila acknowledged that, although he had a cellphone with a camera, he did not take photographs of the injuries to his arm. He recalled writing in the police report that his arm was trapped in the window and that it caused severe pain and discomfort. Defendant was taken into custody on November 9, 2019, at her home. On redirect examination, Avila testified that, after the incident, he saw scratches on his arm.

¶ 16    At the close of the State's evidence, defendant moved for a directed finding on the speeding charge and the four felony charges. With respect to the aggravated-fleeing charge, defense counsel argued that defendant's act of "driving away was not a continuation of the original traffic stop. It was a completely separated [*sic*] physical act, so even if you do find that there was bodily harm in this case, *** they haven't met the elements of the offense for aggravated fleeing ***." The trial court granted defendant's motion on the speeding charge, but it denied the motion as to the remaining charges. Defendant rested without presenting evidence.

¶ 17    As is relevant here, in closing, the State argued as follows concerning the aggravated-fleeing charge:

> "Now, [the] State has also proven beyond a reasonable doubt that the defendant is guilty of aggravated fleeing a police officer resulting in bodily harm. To prove that, Your Honor, we showed that the defendant was a driver or operator of a motor vehicle, her red Mustang. That the defendant was given a visual or audible signal by a police officer

directing the defendant to bring her vehicle to a stop. Your Honor, Officer Avila gave the defendant multiple visual and audible signals, however, the defendant refused to stop.

We have proven that the police officer was in a police uniform. Officer Avila testified that he was in police uniform and that he was in a marked squad car and you can also see this in the squad video. And that the defendant willfully fled or attempted to elude the police officer and cause bodily harm.

The squad video clearly shows the defendant driving away from the traffic stop, speeding away. And Officer Avila testified to the bodily harm. He testified to the soreness he felt from this incident. He testified to the scratches on his arm, despite him not going to the hospital or going to see a medic, that does not mean that there is not bodily harm."

¶ 18    In response, defense counsel argued:

"Respectfully, Your Honor, the act of the actual traffic stop, Your Honor, when initially, when the officer turned on his lights, sounded his siren and my client pulling into the parking lot, Your Honor, there was no injury caused during that entire time period, during that physical act up to the point where she stops and pulls into that parking spot. The act of driving away is not a continuation of the initial turning on the light and sending an audible signal to pull over. This is [a] separate physical act altogether, Your Honor."

The trial court found defendant guilty of all charges.

¶ 19    Defendant filed a motion for a new trial, arguing that "the State failed to prove [her] guilty of the charges *** beyond a reasonable doubt." The trial court denied the motion.

¶ 20    Following a sentencing hearing, the trial court sentenced defendant to 18 months' probation, with 100 hours of community service, and imposed various monetary assessments. (The judgment order reflects that defendant was sentenced on one count each of aggravated battery,

aggravated fleeing, and resisting a peace officer. As to the aggravated-battery conviction, the judgment order does not indicate if the sentence was imposed on count I or count II, but the financial sentencing order indicates that a fine was imposed on count I alone.)

¶ 21    Defendant filed a motion to reconsider her sentence, citing (1) her lack of criminal history, (2) her education and work history, and (3) the presentence investigation reporter's recommendation of conditional discharge. Upon reconsideration, the trial court modified defendant's sentence from 18 months of probation to 18 months of conditional discharge.

¶ 22    Defendant timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24    Defendant contends that she was not proved guilty beyond a reasonable doubt of aggravated fleeing as it was charged in the indictment. She argues that the State charged her with aggravated fleeing based on her act of failing to bring her vehicle to a stop, not based on her act of driving away from the stop. Thus, according to defendant, because the State failed to present any evidence that Avila was injured while defendant failed to bring her vehicle to a stop, the State did not prove the aggravating factor of bodily injury beyond a reasonable doubt, and her conviction must be reduced to misdemeanor fleeing.

¶ 25    Defendant frames her argument as a due process issue, arguing that she has a due process right to be informed of the nature of the accusations against her. She claims that the State charged her with aggravated fleeing and eluding based on one theory (failing to stop) but proved her guilty based on a different, uncharged theory (driving away). In support, she cites *People v. Kolton*, 219 Ill. 2d 353, 359 (2006) (stating that "[a] defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him"), and *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996) (stating that "[t]he failure to charge an offense is the kind of defect which

implicates due process concerns"). She also cites *Russell v. United States*, 369 U.S. 749, 752, 764 (1962), which held that indictments charging refusal to answer certain questions when summoned before a congressional subcommittee were insufficient because they did not identify the subject under inquiry when defendant allegedly refused to answer, and the identity of the subject was central to the prosecution.

¶ 26    The State treats defendant's argument as a challenge to the indictment's sufficiency. The State argues that the indictment was sufficient in that it correctly (1) named the offense, (2) cited the statutory provision allegedly violated, (3) set forth the nature and elements of the offense, (4) noted the date and county of the offense, and (5) listed defendant's name. See 725 ILCS 5/111-3(a)(1)-(5) (West 2020). In her reply brief, defendant makes clear that she is not arguing that the indictment is *facially* insufficient but, rather, that it was insufficient to the extent that the State sought to "re-interpret" it at trial.

¶ 27    The State further argues that defendant was proved guilty beyond a reasonable doubt of aggravated fleeing because the evidence showed that she committed one continuous act of fleeing—from the time Avila activated his overhead lights to the time she drove away from the scene—during which she caused bodily harm to Avila. In reply, defendant contends that, if we were to accept that argument, then the aggravated-fleeing conviction must be vacated under the one-act, one-crime doctrine because it is based on the same act—trapping Avila's arm in the window and driving away—as the other convictions.

¶ 28    Although not expressed as such by defendant, defendant's argument raises a variance issue. See *People v. Roe*, 2015 IL App (5th) 130410, ¶ 8 (finding that a defendant's "argument—that he was denied due process of law where he was 'convicted of a charge not made'—is indeed an argument as to the existence of a fatal variance between the charging instrument and the evidence

presented"). Here, defendant's argument is essentially that she was convicted of an uncharged offense—aggravated fleeing based on the act of driving away from the scene. Accordingly, we will consider defendant's appeal under the fatal-variance framework.

¶ 29    "The State must prove the essential elements of the charging instrument as alleged and without variance." *People v. Miller*, 253 Ill. App. 3d 1032, 1036 (1993). "A fatal variance between the instrument charging a defendant and the proof pursuant to which [the] defendant is convicted at trial requires reversal of the defendant's conviction." *People v. Ligon*, 365 Ill. App. 3d 109, 117 (2006). "For a variance between the charging instrument and the proof at trial to be fatal, the difference 'must be material and be of such character as may mislead the defendant in making his or her defense, or expose the defendant to double jeopardy.' " *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 67 (quoting *People v. Maggette*, 195 Ill. 2d 336, 351 (2001)). "If the essential elements of an offense are properly charged but the *manner* in which the offense is committed is incorrectly alleged, the error is one of form" and will not create a fatal variance. (Emphasis in original.) *Id.*

¶ 30    Fleeing or attempting to elude a peace officer is defined in the Illinois Vehicle Code (Code) (625 ILCS 5/11-204(a) (West 2018)) as follows:

"Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring [her] vehicle to a stop, wilfully fails or refuses to obey such direction, increases [her] speed, extinguishes [her] lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue

lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle."

¶ 31    Aggravated fleeing or attempting to elude a peace officer

"is committed by any driver or operator of a motor vehicle who flees or attempts to elude a peace officer, after being given a visual or audible signal by a peace officer in the manner prescribed in subsection (a) of Section 11-204 of this Code, and such flight or attempt to elude:

    (1) is at a rate of speed at least 21 miles per hour over the legal speed limit;

    (2) causes bodily injury to any individual;

    (3) causes damage in excess of $300 to property;

    (4) involves disobedience of 2 or more official traffic control devices; or

    (5) involves the concealing or altering of the vehicle's registration plate or

digital registration plate." 625 ILCS 5/11-204.1(a)(1)-(5) (West Supp. 2019).

¶ 32    Here, the indictment cited section 11-204.1(a)(2) of the Code (*id.* § 11-204.1(a)(2)) and charged defendant with aggravated fleeing, in that "defendant knowingly drove a vehicle and willfully failed to bring [her] vehicle to a stop after having been given an [*sic*] visual or audible signal by a peace officer, and while doing so caused bodily injury to Officer Avila." Defendant maintains that, under the indictment's language, the aggravated-fleeing charge pertained only to her initial act of failing to stop. Thus, the offense necessarily concluded when she brought her vehicle to a stop in the parking lot. Under defendant's interpretation, her driving away from the scene was a separate uncharged act of fleeing. We disagree. The State's interpretation of the indictment as charging defendant with one continuous act of failing to stop—beginning when

Avila activated his lights and concluding when defendant drove away from the stop—is reasonable and consistent with how the offense was charged.

¶ 33    To be sure, defendant briefly stopped her vehicle and interacted with Avila after she had been given a visual and audible signal to stop. However, before Avila had completed the purpose of the stop, she drove away. Thus, under the law, she ultimately failed to bring her vehicle to a stop in response to Avila's signal, as the indictment alleged. See *People v. Cameron*, 189 Ill. App. 3d 998, 1008 (1989) (holding that "the offense [of fleeing and eluding a peace officer] occurs even though the accused obeys the direction to stop but then, before the purpose of the stop is complete, flees"); see also *People v. Cummings*, 2016 IL 115769, ¶ 13 (a traffic stop's permissible duration is determined by the "seizure's mission" and "related safety concerns," and those concerns "include ordinary inquiries incident to [the traffic] stop, and typically involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance" (internal quotation marks omitted)). Accordingly, we find no error in how defendant was charged.

¶ 34    Even if there were a variance due to the State's failure to delineate the factual progression of the offense—by specifically including the fact that defendant temporarily stopped and interacted with Avila while engaged in a continuing act of fleeing—the variance was not fatal. Defendant does not explain how she was misled in making her defense. See *People v. Simpkins*, 48 Ill. 2d 106, 107, 110-11 (1971) (where the indictment charged the defendants with mob action, based on their acts of disturbing the peace by firing a revolver, but the evidence instead showed that the none of the defendants had a revolver, there was no prejudice because the defendants did not suggest that their testimony was inaccurate or that they omitted evidence because of the variance). Indeed, in arguing for a directed verdict, defense counsel maintained that the act of fleeing was

completed when defendant initially stopped her vehicle. He argued that defendant's act of "driving away was not a continuation of the original traffic stop. It was a completely separated [*sic*] physical act." We do not see how that argument would have been any different had the indictment specifically delineated the factual progression of defendant's actions. In addition, defendant has not been exposed to double jeopardy. As noted, the indictment (1) named the offense, (2) cited the statutory provision allegedly violated, (3) set forth the nature and elements of the offense, (4) noted the date and county of the offense, and (5) listed defendant's name. See 725 ILCS 5/111-3(a)(1)-(5) (West 2020). Thus, if the State attempted a future prosecution based on the same incomplete traffic stop, defendant could show from the trial court record that there was a prior prosecution based on the same facts. See *Lattimore*, 2011 IL App (1st) 093238, ¶ 71.

¶ 35 Having resolved any claim that there was a fatal variance between the indictment and the proof at trial, there is no need to consider a sufficiency-of-the-evidence claim. Defendant makes no argument that the evidence does not support a guilty verdict, based on the State's continuous-act theory. In her reply brief, defendant argues:

"If the initial failure to pull over *was* a separate act, then [the State] did not prove that Avila was injured during that failure to pull over and her conviction must be reduced to a misdemeanor. If the initial failure to pull over *was not* a separate act, but instead a single, continuous act linked with her driving away from the stop, then the State convicted her in violation of the one-act, one-crime doctrine and her conviction must be vacated." (Emphases in original.)

The former argument fails because we have determined that defendant was found guilty of a continuous act that began when Avila activated his lights and concluded when defendant drove away from the stop. Defendant's latter argument seems to concede that the evidence was sufficient

to establish the offense of aggravated fleeing based on a continuous act, because she argues only that a conviction on that basis violates the one-act, one-crime doctrine. We turn now to that argument.

¶ 36   Defendant contends that her conviction of aggravated fleeing violates the one-act, one-crime doctrine because it "was based on the single act of her trapping [Avila's] arm in the window of the car and driving away from the traffic stop," which is the same act that supported the aggravated-battery conviction.

¶ 37   We first note that, in her opening brief, defendant merely argued that *if* the State had charged her with aggravated fleeing based on her act of driving away from the scene, her aggravated-battery conviction would have violated the one-act, one-crime doctrine. Thus, she did not unqualifiedly argue that her aggravated-fleeing conviction violated the doctrine or ask us to reverse the conviction on that basis. Therefore, arguably, she forfeited the issue for raising it for the first time in her reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Moreover, defendant forfeited the issue by failing to raise it below. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, a defendant must raise an objection both at trial and in a written posttrial motion). And, although one-act, one-crime violations are reviewable as second-prong plain error (see *People v. Coats*, 2018 IL 121926, ¶ 10), defendant has forfeited plain-error review by failing to argue it. See *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010) ("[W]hen a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review.").

¶ 38   Forfeiture aside, defendant's argument still fails. The one-act, one-crime doctrine bars convictions for multiple offenses based on the same physical act. *Coats*, 2018 IL 121926, ¶ 11. In

determining if this rule was violated, we first "ascertain[ ] whether the defendant's conduct consisted of a single physical act or separate acts." *Id.* ¶ 12. In this context, " 'act' " means " 'any overt or outward manifestation which will support a different offense.' " *Id.* ¶ 15 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). If we determine that the defendant committed multiple acts, we then determine whether any of the offenses are lesser included offenses. *Id.* ¶ 12. If not, then multiple convictions are proper. *Id.* We review *de novo* whether the defendant's convictions violate the one-act, one-crime doctrine. *Id.*

¶ 39    Here, contrary to defendant's claim, her conduct consisted of separate acts. Although the offense of aggravated battery and the offense of aggravated fleeing shared the common act of causing bodily harm, "[a] person can be guilty of two offenses when a common act is part of both offenses [citation] or part of one offense and the only act of the other offense." (Internal quotation marks.) *Id.* ¶ 15. Defendant's act of aggravated fleeing, which includes the act of bodily harm, also includes the additional act of failing to stop after having been given a visual or audible signal by a peace officer. See 625 ILCS 5/11-204.1(a)(2) (West Supp. 2019).

¶ 40    The next step in the one-act, one-crime analysis is for the court to determine whether any offenses are lesser included. *Coats*, 2018 IL 121926, ¶ 30. We note that defendant makes no argument that either offense is a lesser included offense of the other. Therefore, the argument is forfeited. See Ill. S. Ct. R. 341(h)(7); *People v. Newbern*, 276 Ill. App. 3d 623, 629 (1995) (any issue or argument not clearly defined and sufficiently presented is forfeited). Forfeiture aside, neither offense is a lesser included offense of the other.

¶ 41    In considering whether either offense is a lesser included offense of the other, we apply the "abstract elements" approach. *People v. Smith*, 2019 IL 123901, ¶ 37. "[T]his approach 'will ensure that defendants are held accountable for the full measure of their conduct and harm

caused.' " *Id.* (quoting *People v. Miller*, 238 Ill. 2d 161, 173 (2010)). "Under the abstract elements approach, we compare the statutory elements of the two offenses." *Id.* "If all the elements of one offense are included within the second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* In such a case, we must vacate the lesser offense. *Id.*

¶ 42    We turn to the elements of each offense. A person commits aggravated battery when she "knowingly without legal justification by any means *** causes bodily harm to an individual," (720 ILCS 5/12-3(a)(1) (West 2018)) and, in doing so, "knows the individual battered to be *** [a] peace officer *** performing his or her official duties" (*id.* § 12-3.05(d)(4)(i)). A person commits aggravated fleeing when she is a "driver or operator of a motor vehicle who flees or attempts to elude a peace officer, after being given a visual or audible signal by a peace officer *** and such flight or attempt to elude[ ] *** causes bodily injury." 625 ILCS 5/11-204.1(a)(2) (West Supp. 2019).

¶ 43    Obviously, not all the elements of aggravated fleeing are included in the offense of aggravated battery because aggravated fleeing requires the additional act of fleeing or eluding after having been given a signal to stop. Nor are all the elements of aggravated battery included in the offense of aggravated fleeing. The offense of aggravated battery requires that defendant knowingly battered a peace officer, whereas the offense of aggravated fleeing requires only that defendant's act of fleeing caused bodily injury to *someone*. Thus, committing each offense without necessarily committing the other is possible. Given the different statutory elements, neither offense is a lesser included offense of the other. Accordingly, defendant's convictions of aggravated battery and aggravated fleeing do not violate the one-act, one-crime doctrine.

¶ 44    Defendant next contends that—based on the one-act, one-crime doctrine—we must vacate her resisting-or-obstructing-a-peace-officer conviction because that conviction and her aggravated-battery conviction were based on the same act of trapping Avila's arm in the window. Although she has forfeited this argument by failing to raise it below, she contends it is amenable to plain-error review. See *Coats*, 2018 IL 121926, ¶ 10 ("one-act, one-crime violations fall within the second prong of the plain error doctrine as an obvious error so serious that it challenges the integrity of the judicial process").

¶ 45    The State agrees that the issue is subject to plain-error review and the resisting-or-obstructing-a-peace-officer conviction must be vacated. We accept the State's concession. See *People v. Hagler*, 402 Ill. App. 3d 149, 155-56 (2010) (where the defendant was convicted of aggravated battery of a peace officer and resisting arrest based on the single act of slamming a door on a police officer, we found second-prong plain error and vacated the defendant's conviction of resisting arrest under the one-act, one-crime doctrine). Accordingly, we vacate defendant's conviction of resisting or obstructing a peace officer.

¶ 46                          III. CONCLUSION

¶ 47    Based on the foregoing, we affirm defendant's conviction of aggravated fleeing, and we vacate defendant's conviction of resisting or obstructing a peace officer.

¶ 48    Affirmed in part and vacated in part.

*People v. Arrendondo*, **2023 IL App (2d) 220084**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 19-CF-2247; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Amaris Danak, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |