2024 IL App (1st) 221390-U

SECOND DIVISION
June 11, 2024

No. 1-22-1390

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 10004 |
| | ) | |
| ANTONIO JONES, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1   *Held*: Defendant's sentence for first degree murder is affirmed, the sentence is not a *de facto* life sentence in violation of the United State of Illinois constitutions; defendant's sentence to consecutive sentencing for first degree murder and aggravated kidnapping based on murder is vacated, and the trial court is directed to correct the mittimus to reflect concurrent sentencing; defendant's conviction for aggravated kidnapping is affirmed and the trial court is directed to correct the mittimus to reflect conviction on a different count in the indictment for that offense.

¶ 2   Defendant appeals his consecutive sentences for first degree murder, attempt (first degree murder), armed robbery, two counts of aggravated kidnapping, and heinous battery, and his sentence for a lesser included offense. For the following reasons, we affirm in part, vacate in part, and remand to the trial court with directions.

¶ 3                              BACKGROUND

¶ 4     We begin by summarizing only those facts necessary to resolve defendant's appeal. The circuit court of Cook County convicted defendant, Antonio Jones, of the first degree murder and aggravated kidnapping of Samuel Freeman and the aggravated kidnapping, attempt (first degree murder), armed robbery, and heinous battery of Paul Thompson. Defendant's convictions stem from an offense in which defendant and his co-offenders lured the victims to an abandoned residence for the purpose of purchasing weapons with the intent of robbing them. Defendant's co-offenders were 27, 18, and 20 years old at the time of the offense. Defendant was 17 years old at the time of the offense.

¶ 5     Defendant Jones was armed with a handgun and removed cash and other items from Thompson's pockets. After Freeman was brought in, Jones helped to restrain and beat them with kicks and punches and later to restrain and secure them in a closet at the abandoned house. Jones participated in further assaults and beatings of the two victims after they were in the closet. Later, Jones helped place the victims in the trunk of a car. The car left the residence and eventually stopped. The offenders removed Freeman from the trunk. Bonds, a fourth offender, testified that Freeman actually escaped the trunk, but defendant and a co-offender caught him and struck him in the head with a tire iron. Then, Jones and one co-offender poured gasoline on Thompson. The offenders knocked Thompson unconscious with a brick. Jones set the vehicle alight. Thompson later awoke in the hospital with severe injuries and learned Freeman had died. Thompson identified Jones from a photo array.

¶ 6     Before trial, defendant made a statement to an assistant state's attorney that he was primarily a bystander during the offense. Defendant denied leaving the abandoned house in a car with the co-offenders. .

¶ 7     Two of defendant's co-offenders entered agreements with the State to plead guilty to lesser charges and to receive lesser sentences in exchange for testifying against defendant. Those offenders received sentences of 18 and 12 years' imprisonment. A third co-offender was tried in a severed, simultaneous jury trial with defendant. At trial, defendant denied any involvement in the offense and denied making an oral statement about his involvement.

¶ 8     The third co-offender, who was 20 years old at the time of the offense, was acquitted of all charges. Jones was sentenced to an aggregate term of 72 years' imprisonment. At the initial sentencing hearing, the State argued for consecutive sentencing on the ground the victims suffered severe bodily injury during the commission of the non-murder offenses as evidenced by testimony the victims were beaten and burned and the closet in which they were confined was smeared with blood.

¶ 9     This court affirmed defendant's conviction on direct appeal. Defendant's direct appeal did not involve any sentencing issues.

¶ 10    In May 2015, defendant filed a petition for postconviction relief claiming that he received a sentence that violated the eighth amendment to the United State Constitution (U.S. Const., amend. VIII). In 2017, defendant's attorney filed a supplemental petition that argued that the trial court imposed a *de facto* life sentence without considering defendant's youth in violation of the eighth amendment. In October 2020, defendant's petition advanced to the third stage of postconviction proceedings. In February 2021, the trial court granted defendant a new sentencing hearing.

¶ 11    In May 2022, the court held a new sentencing hearing. Defendant denied actually killing anyone but admitted his participation in the crime. Defendant said his acts were childish. Following the hearing, the trial court stated defendant has the strong possibility of rehabilitation.

The court expressly rejected defendant's entreaty that his acts were childish, noting that the victims were robbed, beaten, bound, burned, and assaulted with dog feces and human urine. They were then transported to another location in the trunk of a car where they were beaten again and assaulted with gasoline. But the court did also laud defendant's attempts at self-improvement.

¶ 12    The trial court sentenced defendant to 20 years' imprisonment for the murder and 6 years' imprisonment on each of the remaining felonies. The court found that it was required to order the sentences to run consecutively. The court's findings resulted in an aggregate sentence of 50 years' imprisonment.

¶ 13    Defendant filed a motion to reconsider sentence on the grounds defendant's sentences should run concurrently because the Class X felonies are lesser included offenses under the "one-act/one-crime" rule. Defendant argued the crime was one long, continuous act. Alternatively, defendant argued the convictions for armed robbery and heinous battery should merge into the conviction for attempt (first degree murder) and run consecutively to the aggravated kidnapping and first degree murder convictions. In June 2022, the trial court denied defendant's motion to reconsider. The court noted it had considered the factors courts must consider when sentencing a juvenile as well as the evidence in mitigation and the facts of the case.

¶ 14    In July 2022, defendant filed an amended motion to reconsider on the issue of credit against defendant's sentence. In July 2022, the trial court granted defendant additional sentencing credits defendant received from activities he participated in while imprisoned.

¶ 15    Defendant filed a notice of appeal the same day the trial court awarded the additional sentencing credits. On March 29, 2023, our supreme court issued a supervisory order directing this court to treat defendants' July 2022 notice of appeal as timely filed.

¶ 16    This appeal followed.

¶ 17                                   ANALYSIS

¶ 18    This is an appeal from the denial of a motion to reconsider defendant's sentence as a juvenile to an aggregate term of imprisonment of 50 years. On appeal from the denial of a motion for reconsideration of sentence, the applicable standard of review is "whether the trial court has committed an abuse of discretion in sentencing [the] defendant. [Citation.] An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable or where no reasonable person would take the view adopted by the trial court." *People v. Johnson*, 347 Ill. App. 3d 570, 573-74 (2004); see *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 12 ("We review a trial court's sentencing decision for an abuse of discretion, as the trial court, having observed the defendant and the proceedings, is better suited to consider sentencing factors than the reviewing court, which relies on the 'cold' record.").

¶ 19    On appeal, defendant raises several challenges to his sentence. First, defendant argues that his "50-year *de facto* life sentence" violates both the United States and Illinois Constitutions in the following ways: (1) the sentence of "*de facto* life" imprisonment violates the eighth amendment to the United States Constitution because defendant is not "permanently incorrigible;" (2) defendant's "*de facto* life sentence" violates the eight amendment because it is contrary to the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) and our supreme court's decision in *People v. Holman*, 2017 IL 120655 in that the sentence (a) does not provide a "meaningful opportunity" to obtain release as required by *Miller* and (b) is constitutionally disproportionate (under the eighth amendment) absent a finding of permanent incorrigibility; (3) defendant's "50-year-*de facto* life sentence" violates Illinois's proportionate penalties clause absent a finding of permanent incorrigibility; (4) the sentence

- 5 -

violates both the eighth amendment and the proportionate penalties clause in that "the court's findings contradict *Miller*'s directives" about youth; and (4) the trial court erred in ordering all of his sentences to run consecutively because "murder and armed robbery [are] not triggering offenses for consecutive sentencing."

¶ 20    "[W]e review *de novo* whether a sentence violates the eighth amendment or the proportionate penalties clause." *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 67. Defendant's arguments on appeal depend heavily on two premises. Defendant's first argument is that the trial court sentenced defendant to a *de facto* life term of imprisonment. In Illinois, a sentence of imprisonment greater than 40 years imposed on a juvenile is a *de facto* life sentence. *People v. Hilliard*, 2023 IL 128186, ¶¶ 14, 27; *People v. Buffer*, 2019 IL 122327, ¶ 41 ("a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence"). The second is that before imposing a discretionary *de facto* life sentence on a juvenile, the trial court must make a finding that the juvenile is "permanently incorrigible." In *Hilliard*, our supreme court held that:

> "Under *Miller* and *Montgomery* [(construing *Miller*)], a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the [*Miller*] factors ***. See *Miller*, 567 U.S. at 477-78, ***." *Holman*, 2017 IL 120655, ¶ 46.

¶ 21    However, our rules concerning juvenile *de facto* sentences of life imprisonment do not end with *Hilliard* and *Holman*. First, with regard to the Illinois rule that a sentence of 40 years' imprisonment constituting a *de facto* life sentence, our supreme court interpreted that rule in *People v. Dorsey*, 2021 IL 123010. In *Dorsey*, our supreme court found that where the defendant has an "opportunity to demonstrate maturity and rehabilitation" to obtain release before serving 40 years' imprisonment "in violation of *Buffer*'s more-than-40-years pronouncement" the defendant has not been "sentenced to the functional equivalent of a life sentence without the possibility of parole." *Id.* ¶ 50. In *Dorsey*, the opportunity for release before passing the 40-year mark came from day-for-day good conduct credits. *Id.* ¶ 51. The court reasoned that "[w]hile it is true that the trial court sentenced defendant to a 76-year aggregate term of imprisonment, it is the legislature, through the statutory scheme that it has enacted, that determines how much of that sentence the person must serve. And it has offered the opportunity for early release ***." *Id.* (citing 730 ILCS 5/3-3-3(c) (West 1994)). The court found that this statutory sentencing scheme was "designed to encourage rehabilitation and enable an offender to be released after he serves half of the determinate sentence. It allows a predictable, fairly accurate assessment at the time of sentencing of the ultimate length of imprisonment." *Id.* ¶ 52.

¶ 22    The opinion in *Dorsey* states that its holding is not solely dependent on a day-for-day good conduct credit sentencing scheme but found that the determining factor is whether "it is in a defendant's power to shorten his sentence by earning good-conduct credit and that earning such credit allows a defendant the opportunity to exhibit maturity and rehabilitation." *Id.* The court found such a statutory scheme "at least on par with discretionary parole for a life sentence, which has specifically been held by the [United States] Supreme Court to pass muster under the eighth amendment." *Id.* Moreover, the court found as follows:

"[O]ur conclusion is consistent with this court's treatment in *Reyes* and *Patterson*, where we took into consideration the juvenile defendants' earliest opportunity for release in assessing whether a *de facto* life sentence had been imposed. See *Reyes*, 2016 IL 119271, ¶ 10 (calculating that the defendant's 'earliest opportunity for release' was after serving 89 years of his 97-year sentence, meaning that the 16-year-old offender would remain in prison until at least the age of 105); see also *Patterson*, 2014 IL 115102, ¶ 108 (defendant 'was statutorily mandated to serve at least 85% of his total prison term [citation], or 30 years, 7 months,' and, although lengthy, sentence was not comparable to life in prison without parole)."

*Id.*

¶ 23    The State argues that defendant's "*Miller*-based" challenges to his sentences, whether under the eighth amendment or the proportionate penalties clause, fail because he is not serving a *de facto* life sentence. In support, the State first argues that, under *Dorsey*, "courts must determine the earliest date on which the defendant may be released *** by considering *** the opportunity for statutory sentencing credit," and if that date occurs before defendant has served more than 40 years in prison, "then the sentence is not a *de facto* life term."

¶ 24    We find defendant did not receive a *de facto* sentence of life imprisonment under this court's current rules because (a) defendant is eligible for good conduct credits that give him the opportunity to be released before serving 40 years in prison and (b) defendant has a meaningful opportunity for parole after serving 20 years that also gives him a meaningful opportunity to be released before serving 40 years in prison, the threshold for a *de facto* life sentence.

¶ 25    In this case, although defendant must serve 100% of the sentence for murder, he need only serve 85% of the sentences for attempt murder, armed robbery, aggravated kidnapping (two

counts) and heinous battery. Although the 85% requirement still results in an aggregate term of more than 40 years, the State argues defendant has already earned, and been awarded, additional sentence credit for a variety of programs defendant has participated in while imprisoned, which defendant requested in his amended motion to reconsider sentence. The State argues that the application of these sentencing credits results in an actual sentence of less than 40 years. The State also argues that defendant may petition for release before he serves 40 years in prison under our new juvenile parole rules codified at section 5-4.5-115(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-115(b) (West 2020)). The State concedes a split in authority on the issue of whether the juvenile parole statute provided the eighth amendment-required "meaningful opportunity" for early release. Regardless, the State argues, defendant is not serving a *de facto* life sentence under *Dorsey*. We agree with the State.

¶ 26 Defendant does not dispute the State sentence calculations. Defendant argues in reply that at the time of sentencing, the trial court did not know defendant would receive the additional sentencing credits that he did, and "[t]he fact that [defendant] was later able to amass programming credits, which also may still be revoked, does not negate the unconstitutionality of the original *de facto* sentence." We disagree. We do not have jurisdiction to consider defendant's "original sentence." "In general, '[a] notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts of judgments specified in the notice.' " *People v. Ruddock*, 2022 IL App (1st) 173023-B, ¶ 57. Defendant's notice of appeal specifies the resentencing and post-sentencing motion and the sentence to "20 years Murder, 6 years consecutive on remaining counts."

¶ 27 Furthermore, the *Dorsey* court held that

"focusing solely on the sentence imposed rather than the statutory scheme in its entirety as required by the United States Supreme Court would lead to absurd results and would invalidate or prohibit every sentence imposed on a juvenile offender that is more than 40 years, regardless of the opportunity to demonstrate rehabilitation and obtain release earlier through the legislatively guaranteed statutory credit." *Dorsey*, 2021 IL 123010, ¶ 64.

Additionally, this court has construed *Dorsey* to mean that "[a]ssuming [the defendant] receives all the credit he is entitled to, [such that he] will serve [a number of] years in prison *** below *Buffer*'s 40-year ceiling"; "[u]nder *Dorsey*, [the defendant] is not serving a *de facto* life sentence, and his sentence need not be *Miller*-compliant." *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 36. It is undisputed that defendant did receive additional sentencing credits while incarcerated that will reduce his aggregate sentence.

¶ 28   Because defendant is not serving a *de facto* life sentence, his sentence does not trigger *Miller* or the eighth amendment. *Id.*; *Dorsey*, 2021 IL 123010, ¶ 65. The State contends that because defendant is not serving a *de facto* life sentence, we have no need to address his proportionate penalties clause claims. Defendant refutes that contention by arguing that "[i]f ** this Court agrees *** that a *de facto* life sentence was not imposed *** the sentence still violates [the] proportionate penalties clause."

¶ 29   Defendant argues his sentence violates the proportionate penalties clause because it was imposed without a finding of "permanent incorrigibility." Defendant also argues that the trial court, "contrary to *Miller*," failed to adequately consider defendant's youth, and that the sentence violates "our State's codification of [the] *Miller* factors." Defendant asks this court to "find that *Holman*'s juvenile sentencing protections—including its prohibition on imposing a life term on a

juvenile offender without making a finding of permanent incorrigibility—apply under Illinois' proportionate penalties clause, irrespective of the eighth amendment."

¶ 30    Defendant supports his argument by noting that our supreme court "recently noted that *Miller*'s analysis of the mitigating circumstances of youth and its attendant circumstances provides 'helpful support' to evaluate juvenile sentencing practices under our own state constitution." Defendant argues our supreme court "expanded *Miller*'s protections for juvenile offenders, by finding that individual or aggregate sentences over 40 years are a *de facto* life term, and that certain youth-related factors must be considered before imposing a life term." Defendant also notes that "in the past decade the General Assembly has established many new rules and procedures designed to provide minors more protection in *** sentencing." However, those *sentencing* changes are addressed to making sentencing in Illinois *Miller*-compliant.  See 730 ILCS 5/5-4.5-105 (West 2020) (requiring consideration of youth-related mitigating factors); *id.* § 5-4.5-115 (providing parole opportunities to juvenile offenders).

¶ 31    First, defendant's reliance on *Holman* is misplaced. "*Holman* held that, under *Miller* and *Montgomery*, a juvenile offender may be sentenced to life in prison under a discretionary sentencing scheme only 'if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Wilson*, 2023 IL 127666, ¶ 30. Our supreme court has expressly overruled *Holman*. *Id.* ¶ 42.

¶ 32    In *Wilson*, the defendant similarly argued the trial court violated the eighth amendment "by imposing a *de facto* life sentence without first making a finding of permanent incorrigibility." *Id.* ¶ 1. In a motion for leave to file a successive postconviction petition, the defendant raised both an eighth amendment claim and a proportionate penalties clause claim

under the Illinois Constitution of 1970. *Id.* ¶ 19. The defendant's eighth amendment claim argued that "a sentencing court must make a finding of permanent incorrigibility and must specifically address the attendant characteristics of youth discussed in *Miller* before sentencing a juvenile offender to life in prison." *Id.* The appellate court granted the defendant's motion based on his eighth amendment claim and for that reason did not address his proportionate penalties clause claim. *Id.* ¶ 20.

¶ 33    On appeal to our supreme court, the court found that the defendant failed to establish prejudice to satisfy the cause-and-prejudice test for the filing of a successive postconviction petition. *Id.* ¶ 25. The State argued that "the appellate court erred in relying on *Holman* because the rule announced in that decision has been abrogated by the United States Supreme Court's opinion in *Jones v. Mississippi* ***." *Id.* ¶ 33. Regarding *Jones*, the *Wilson* court found that:

> "*Jones* explained that *Miller* 'declined to characterize permanent incorrigibility as *** an eligibility criterion.' [Citation.] Rather, it 'required that a sentencer consider youth as a mitigating factor when deciding whether to impose a life-without-parole sentence' but 'did not require the sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence.' [Citation.] Similarly, *Jones* noted that in *Montgomery*, the Court expressly stated that ' "*Miller* did not impose a formal factfinding requirement" ' and added that ' "a finding of fact regarding a child's incorrigibility…is not required." ' " *Id.* ¶ 35.

¶ 34    *Jones* further held that an on-the-record sentencing explanation with "an implicit finding of incorrigibility" was not constitutionally required; nor is such an explanation " 'necessary to ensure that a sentencer considers a defendant's youth' " because " 'if the sentencer has discretion

to consider the defendant's youth, the sentencer necessarily will consider the defendant's youth ***.' " (Emphasis omitted.) *Id.* ¶ 36. In sum, "a discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *Id.* ¶ 38 (discussing *Jones*). Our supreme court determined that "*Holman*'s holding that a juvenile offender's discretionary life sentence does not comport with the eighth amendment unless the sentencing court first makes a finding of permanent incorrigibility after specifically addressing the '*Miller* factors' is *directly* at odds with the holding in *Jones*" (emphasis in original) (*id.* ¶ 42) and thus expressly overruled *Holman* (*id.*).

¶ 35　　In *Cavazos*, 2023 IL App (2d) 220066, the defendant argued that absent a finding of permanent incorrigibility, the "decision to impose a *de facto* life sentence violate[s] the proportionate penalties clause." *Id.* ¶ 62. The defendant in *Cavazos* relied on "this state's jurisprudence reflecting evolving standards of decency for juvenile sentencing, particularly as those principles were summarized in *Holman*." *Id.* The defendant also cited *Griffin*, "noting comments in that decision about *Holman*'s reasoning and its conclusion that *Holman*, although decided under the eighth amendment, set a minimum for our own proportionate penalties clause and remains good law. See *Griffin*, 2021 IL App (1st) 170649-U, ¶ 87 (Gordon, J., specially concurring)." *Id.*

¶ 36　　The *Cavazos* court found that the "defendant's sentence, despite the absence of a finding of permanent incorrigibility, does not violate *Holman*, which concerned juvenile offenders who are sentenced to life *without* parole." (Emphasis in original.) *Id.* ¶ 64. The court found that "a defining characteristic in the sentences considered in the foregoing case law was no possibility of parole." *Id.* ¶ 41; *Holman*, 2017 IL 120655, ¶ 46; *Miller*, 567 U.S. at 480; *Montgomery v.*

*Louisiana*, 577 U.S. 190, 211-12 (2016) ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.").

¶ 37 The *Cavazos* court noted that "this state has taken at least three critical steps toward rectifying the core concerns implicated when sentencing juvenile offenders" (*Cavazos*, 2023 IL App (2d) 220066, ¶ 42), including that now "nearly all juvenile offenders now have the possibility of parole. See 730 ILCS 5/5-4.5-115(b) (West 2020)." *Id.* This "new parole statute afford[s] the defendant a meaningful opportunity for release based upon maturity and rehabilitation before a *de facto* life sentence of over 40 years' imprisonment is served." *Id.* ¶ 43 (citing *People v. Beck*, 2021 IL App (5th) 200252, ¶ 26).

¶ 38 Pursuant to *Dorsey*, " 'a sentence imposed pursuant to a statutory scheme that affords a juvenile *an opportunity* to be released from prison after serving 40 years *or less* of the term imposed does *not* constitute a *de facto* life sentence.' " (Emphases in original.) *Id.* ¶ 44 (quoting *Dorsey*, 2021 IL 123010, ¶¶ 1, 62, 65.). The *Cavazos* court concluded that the defendant had not been sentenced to life without parole or the equivalent of life without parole "because he is *eligible for parole* before serving the equivalent of a life sentence." (Emphasis in original.) *Id.* The *Cavazos* court held that,:

"[a]s such, even if, theoretically, *Holman*'s requirement for an incorrigibility finding had remained valid, and a failure to issue one might have violated the proportionate penalties clause, there would be no such violation *here* by the sentence imposed upon defendant, as he will have two meaningful opportunities to seek release prior to serving more than 40 years' imprisonment. In sum, we reject defendant's argument that the court's failure to make a finding of

permanent incorrigibility renders his sentence in violation of the proportionate penalties clause." (Emphasis in original.) *Id.* ¶ 64.

¶ 39    Thus, defendant's reliance on *Holman* in support of finding that the court must find permanent incorrigibility before imposing a *de facto* life sentence is misplaced. Defendant's reliance on *Holman* to find that other " 'juvenile sentencing protections' " apply under Illinois's proportionate penalties clause is also misplaced. See *supra* ¶ 28.

¶ 40    First, *Holman* did not address a separate proportionate penalties clause argument. See *Holman*, 2017 IL 120655. Second, *Holman* held only that

"a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the [*Miller*] factors ***." *Id.* ¶ 46.

Although *Holman* required consideration of the *Miller* factors it did so in the context of determining whether a defendant could be sentenced to life imprisonment without parole, or a *de facto* life sentence. Therefore, at least under *Holman*, any additional "juvenile sentencing protections" are only triggered by a *de facto* life sentence.

¶ 41    The *Wilson* court, which overruled *Holman*, did not address the impact of its holding on defendant's proportionate penalties clause claim. The question is whether a defendant may bring an as-applied challenge under Illinois's proportionate penalties clause that seeks to utilize the principles announced in *Miller* and its progeny under the eighth amendment to establish a

violation of our proportionate penalties clause absent a *de facto* life sentence. We find a defendant may not.

¶ 42 "The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences." *Hilliard*, 2023 IL 128186, ¶ 29. Our supreme court held that

> "insofar as the appellate court decision can be read as holding that an adult defendant cannot bring an as-applied challenge under the proportionate penalties clause to a sentence other than life, it does not accurately reflect the law. This concession is clearly correct, as a defendant may challenge a sentence of any length." *Id.*

But the *Hilliard* court recognized that there is a difference between a "traditional" proportionate penalties clause claim and a proportionate penalties clause claim premised on *Miller* and its progeny. See *People v. Thompson*, 2022 IL App (1st) 200463, ¶ 28 ("to prevail on his *Miller*-based claim, defendant must show that he 'was subject to a life sentence, mandatory or discretionary, natural or *de facto*.' " (quoting *Buffer*, 2019 IL 122327, ¶ 27)). A defendant can succeed under a "traditional" proportionate penalties clause analysis only when "either the penalty is harsher than the penalty for a different offense containing identical elements [citation] or 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Hilliard*, 2023 IL 128186, ¶ 20 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)).

¶ 43 In *Thompson*, this court rejected the defendant's proportionate penalties clause claim based on *Miller* because, with the application of day-for-day good conduct credit, the defendant did not receive a *de facto* life sentence. The court found that "[u]ntil we have further guidance from our supreme court, we adhere to *Buffer*'s 40-year line when determining whether a young

adult defendant received a *de facto* life sentence that required the protections of *Miller*."
*Thompson*, 2022 IL App (1st) 200463, ¶ 47. The *Thompson* court found that the "[d]efendant can
of course argue that his less-than-*de facto* life sentence is unconstitutional based on the particular
facts of his case. This argument, however, is a straight-forward proportionate penalties claim that
does not rely on *Miller*'s protections for juvenile defendants." *Id.*; see *People v. Hemphill*, 2022
IL App (1st) 201112, ¶¶ 25, 29 (rejecting the defendant's argument "that, because he received a
*de facto* life sentence without any consideration of the mitigating effects of his youth, as a 21-
year-old, he has a viable claim that his sentence violates the proportionate penalties clause"
where the "defendant's 40-year sentence does not constitute a *de facto* life sentence under *Buffer*
and *Dorsey*.").

¶ 44    In *Hilliard*, the defendant relied on decisions in *People v. Thompson*, 2015 IL 118151,
*People v. Harris*, 2018 IL 121932, and *People v. House*, 2021 IL 125124, "all cases that
referenced or discussed *Miller*," in support of his proportionate penalties clause challenge to the
application of a mandatory sentencing enhancement. *Hilliard*, 2023 IL 128186, ¶ 23. Our
supreme court rejected the defendant's reliance on those cases because

> "the mandatory 25-year firearm enhancement was not a mandatory life sentence, and
> even with the discretionary sentence for murder added to the enhancement, defendant's
> total sentence was 40 years, less than what we have defined as a *de facto* life sentence for
> juveniles under *Buffer*. Thus, as defendant did not receive a mandatory life sentence,
> *Thompson*, *Harris*, and *House* do not provide support for his proportionate penalties
> claim." *Id.* ¶ 27.

However, in *Hilliard*, in making his proportionate penalties clause claim, the "[d]efendant
insist[ed] that he is relying on *Leon Miller* rather than *Miller* and its progeny." *Id.* ¶ 30.

¶ 45    Furthermore, in *Hill*, court had the parties address the specific question: "Whether *People v. Dorsey* \*\*\* applies to juvenile sentencing claims seeking to apply the principles of *Miller v. Alabama* \*\*\*, and its progeny under the proportionate penalties clause of the Illinois Constitution." (Internal quotation marks omitted.) *Hill*, 2022 IL App (1st) 171739-B, ¶ 37. This court concluded that:

> "*Dorsey* forecloses Hill's *Miller* claim under the proportionate penalties clause. Whether raised under the eighth amendment or the proportionate penalties clause, a juvenile defendant must make the same threshold showing: his or her sentence is a life sentence or *de facto* life sentence. The constitutional source of the claim is irrelevant to this preliminary inquiry. Under *Dorsey*, [the defendant] is not serving a *de facto* life sentence (*supra* ¶ 36), so neither the United States nor the Illinois Constitution has any work to do." *Id.* ¶ 42.

See *Cavazos*, 2023 IL App (2d) 220066, ¶ 64 ("even if, theoretically, *Holman*'s requirement for an incorrigibility finding had remained valid, and a failure to issue one might have violated the proportionate penalties clause, there would be no such violation *here* by the sentence imposed upon defendant, as he will have two meaningful opportunities to seek release prior to serving more than 40 years' imprisonment [or, in other words, since he did not receive a *de facto* life sentence]").

¶ 46    After carefully reviewing defendant's arguments in his opening brief, we must agree with the State that defendant raised no other grounds challenging his sentence as violative of the eighth amendment protections afforded to juveniles under *Miller* and its progeny. In other words, defendant did not put forth "a straight-forward proportionate penalties claim that does not rely on

*Miller*'s protections." *Thompson*, 2022 IL App (1st) 200463, ¶ 47.[1] Defendant maintained his right to raise a claim under the proportionate penalties clause of the Illinois Constitution, but defendant has not stated a sufficient basis for a "traditional" proportionate penalties clause claim independent of *Miller*. *Hill*, 2022 IL App (1st) 171739-B, ¶ 44 (finding the defendant raised a proportionate penalties clause claim unrelated to *Miller*). As demonstrated above, we cannot grant defendant *Miller*-based relief under our proportionate penalties clause because defendant is not serving a *de facto* life sentence under *Dorsey* where defendant has the ability to receive sentencing credits to secure his release or to obtain parole before serving 40 years in prison. Furthermore, "points not argued in the opening brief are forfeited and cannot be raised for the first time in the reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)." *People v. Franklin*, 2023 IL App (1st) 200996, ¶ 103. (We also note, not coincidentally, that defendant was resentenced to the minimum possible term for each of his convictions, and in this appeal, defendant is challenging the consecutive sentencing for some of those convictions.)

¶ 47     We also reject defendant's assertion that *Dorsey* "supports the assertion that only 'day-for-day' good-conduct credits may be subtracted from a defendant's sentence for purposes of determining whether said sentence constitutes a *de facto* life term." Defendant attempts to distinguish *Dorsey* on the basis that the sentencing credit he received "is not 'predictable,' and, unlike 'day-for-day' good conduct credits, cannot provide a 'fairly accurate' assessment regarding the ultimate length of imprisonment at the time of sentencing." We reject defendant's

---

[1]Defendant specifically asked this court to "find that the juvenile sentencing protections the Illinois Supreme Court laid out in *Holman*," which defendant acknowledged was "an eighth amendment decision," "continue to apply under the broader protections of the proportionate penalties clause."

argument because it does not account for language in *Dorsey* finding that under a sentencing scheme that merely allows for earning good conduct credits to secure early release,

> "it is in a defendant's power to shorten his sentence by earning good-conduct credit and that earning such credit allows a defendant the opportunity to exhibit maturity and rehabilitation. The statutory scheme here, which allows for the opportunity of release short of a *de facto* life sentence, is at least on par with discretionary parole for a life sentence, which has specifically been held by the Supreme Court to pass muster under the eighth amendment." *Dorsey*, 2021 IL 123010, ¶ 54.

¶ 48    The *Dorsey* court compared good conduct credits, from any source, to parole, and noted that

> "[d]espite this lack of certainty in the parole system, the Supreme Court has nonetheless held that extending parole eligibility to juvenile offenders satisfies the eighth amendment and that a State may remedy a *Miller* violation by merely permitting the offender to be considered for parole without any resentencing. *Montgomery*, 577 U.S. at 212." *Id.* ¶ 56.

The court found "it undeniable that the ability of defendant to earn day-for-day credit under that scheme presents a 'meaningful opportunity' for release from prison short of a *de facto* life sentence." *Id.* ¶ 62. *Dorsey* provides no reason for us to find that discretionary good conduct credits do not provide a similar meaningful opportunity for release, and we believe *Dorsey* refutes that contention. The determining factor of whether a sentence is a *de facto* life sentence under *Buffer* is the "the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Id.* ¶ 64 (discussing, without limitation thereto, day-for-day good conduct credit).

¶ 49 Similarly, we find *Dorsey* dispels defendant's argument that this court should focus on the original sentence and ignore the sentencing credit defendant could (and did) earn. The court held that,

> "we note that acceptance of defendant's argument focusing solely on the sentence imposed rather than the statutory scheme in its entirety as required by the United States Supreme Court would lead to absurd results and would invalidate or prohibit every sentence imposed on a juvenile offender that is more than 40 years, regardless of the opportunity to demonstrate rehabilitation and obtain release earlier through the legislatively guaranteed statutory credit." *Id.*

It is also clear from *Dorsey* that the current 85% truth-in-sentencing scheme qualifies as providing a meaningful opportunity to obtain release. "It is the *sentencing scheme* that must afford a youthful offender a realistic opportunity for release" to pass constitutional muster. (Emphasis in original.) *Id.* ¶ 58.

¶ 50 The sentencing scheme must provide the "defendant 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before he spends more than 40 years in prison." *Id.* ¶ 65. A sentence that provides an opportunity for release before the 40-year mark is "not a *de facto* life sentence in violation of the eighth amendment." *Id.*; accord *Cavazos*, 2023 IL App (2d) 220066, ¶ 44 ("*Dorsey*, which, although it considered day-for-day, good-conduct credit, reasoned, 'a sentence imposed pursuant to a statutory scheme that affords a juvenile *an opportunity* to be released from prison after serving 40 years *or less* of the term imposed does *not* constitute a *de facto* life sentence.' (Emphases added.) [Citation.] *** [T]he 'statutory scheme here, which allows for the *opportunity of release short* of a *de facto* life sentence, is at least on par with *discretionary* parole for a life sentence, which has specifically

been held by the Supreme Court to pass muster under the eighth amendment.' " (Emphases in original.)).

¶ 51    This court has recognized:

"The [*Dorsey*] court concluded that we cannot determine whether a defendant's sentence constitutes a *de facto* life sentence without considering sentence credit. [Citation.] The court focused on a defendant's agency taking 'a direct stake in maintaining good order and discipline while incarcerated.' (Internal quotation marks omitted.) [Citation.] The court determined that a defendant would only serve their complete sentence if they failed to demonstrate the rehabilitative potential *Miller* contemplates. [Citation.] The court then rejected *Peacock*'s primary rationale, supported (we thought) by *Buffer*, finding it of 'no moment' that the trial court has no control over good-conduct credit at the time it imposes sentence. [Citation.] Because defendants ostensibly have 'power' to shorten their sentences by earning good-conduct credit (*id.* ¶ 54), the court reasoned, they have a sufficient 'opportunity to demonstrate rehabilitation and obtain release before [they] spend[ ] more than 40 years in prison' (*id.* ¶ 61)." *Hill*, 2022 IL App (1st) 171739-B, ¶ 35.

¶ 52    Moreover, the State's argument does not erroneously assert that defendant's *remaining sentence*, after application of the sentencing credits, is less than 40 years; rather, the State argues that with the application of the 85% truth-in-sentencing rules and defendant's additional sentencing credits, which defendant has undoubtedly earned and actually requested be applied, defendant's aggregate sentence, from that *initially* imposed by the trial court, is less than 40 years. *Cf. Cavazos*, 2023 IL App (2d) 220066, ¶ 34 (the "actual time" served after considering

opportunities for early release, "and whether that amount exceeds 40 years, includes *all* time served, not just the amount remaining to be served after a sentence is imposed" either initially or in a post-sentencing proceeding (emphasis in original)).

¶ 53 We find that defendant's "separate" proportionate penalties clause claims in his opening brief seek to apply the principles of *Miller* and its progeny to defendant's sentence. All of those arguments depend upon defendant serving a *de facto* life sentence to trigger those protections, and he is not. Therefore, defendant's sentence is affirmed.[2] [3] Even if the proportionate penalties clause provides defendant greater protection than the eighth amendment, his claims that his sentence violates the proportionate penalties clause are based on protection afforded *de facto* life sentences through *Miller* and the eighth amendment. Defendant is not serving a *de facto* life sentence; therefore, his arguments that the proportionate penalties clause affords him those protections given to defendants against *de facto* life sentences under the eighth amendment, regardless of whether the sentence itself violates the eighth amendment, fail.

¶ 54 We now turn to defendant's argument that the trial court erred in finding that consecutive sentencing was required in this case. The trial court resentenced defendant to 20 years' imprisonment for first degree murder and six years' imprisonment on each of two counts of aggravated kidnapping, attempt (first degree murder), aggravated robbery, and heinous battery.

---

[2]We nonetheless feel obligated to note, without deciding the issues, that many of defendant's arguments concerning *Miller* protections under the proportionate penalties clause, particularly those concerning whether Illinois juvenile parole law provides a "meaningful opportunity" for early release, were recently addressed and rejected by the Second District of this court. See *Cavazos*, 2023 IL App (2d) 220066, ¶¶ 49-60. We have carefully reviewed our sister district's analysis of the issue and would agree with its outcome that "the new parole statute affords defendant a meaningful opportunity for release, based on his maturity and rehabilitation, before serving a *de facto* life sentence of over 40 years' imprisonment." *Id.* ¶ 60.

[3]Our supreme court rejected an argument under the proportionate penalties clause that the court should view such claims "in light of legislation that shows society's evolving standard of decency" and that "that these laws represent our current moral compass." *Hilliard*, 2023 IL 128186, ¶ 36.

The trial court ordered all of defendant's sentences to run consecutively, believing the law required it. Defendant argues neither murder nor armed robbery were "triggering offenses" for consecutive sentencing in this case. Defendant asks this court to "order that [defendant's] sentences for murder and armed robbery run concurrent to one another."

¶ 55    The sentencing statute in effect at the time of this offense provided, in pertinent part, as follows:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12-13, 12-14, or 12-14.1 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5-8-4(a) (West 1998).

¶ 56    In *People v. Whitney*, 188 Ill. 2d 91, 96 (1999), the issue was "whether the Class X or Class 1 felony must involve the infliction of severe bodily injury to the victim of that felony to trigger mandatory consecutive sentences under section 5-8-4(a)." Our supreme court construed "the first exception under section 5-8-4(a) as requiring consecutive sentencing where the defendant has been convicted of either a Class X or Class 1 felony and where he had inflicted severe bodily injury during the commission of that felony." *Id.* at 98-99. In other words, it is not enough that the defendant committed at least one Class X or Class 1 felony and the defendant inflicted severe bodily injury on at least one of the victims. See *id.* at 95. Instead, a Class X or Class 1 felony is only a triggering offense for consecutive sentencing where the severe bodily

injury was inflicted in the commission of that Class X or Class 1 felony. See *id.* Then, "[i]f multiple convictions arise out of a single course of conduct, and one or more of those convictions is for a triggering offense, section 5-8-4(a) *requires* that any sentence for the triggering offense or offenses be served consecutively to any sentence imposed for nontriggering offenses." (Emphasis in original.) *People v. Sergeant*, 326 Ill. App. 3d 974, 986 (2001).

¶ 57 In this case, defendant argues that his conviction for first degree murder is not a triggering offense and he did not inflict severe bodily injury during the commission of the armed robbery. Defendant argues the robbery was complete before "Thomson and Freeman were restrained, beaten, and placed in a closet." Finally, defendant concedes this particular claim of error was not preserved for review and asks this court to review the issue under the plain error doctrine.

¶ 58 The State responds defendant's conviction for armed robbery must be served consecutively to the sentences on the remaining counts because consecutive sentencing was mandatory under section 5-8-4(a) where "defendant's commission of armed robbery and infliction of severe bodily injury occurred 'essentially' simultaneously." The State does not argue that defendant inflicted serious bodily injury during the armed robbery; the State argues that "defendant inflicted and continued to inflict severe bodily injury *** at *essentially the same time* that he committed the armed robbery." (Emphasis added.) The State asserts it is sufficient that the armed robbery and infliction of severe injury occurred "close enough in time" that consecutive sentencing for the armed robbery was mandatory.

¶ 59 In *People v. Myers*, 85 Ill. 2d 281, 287 (1981), the "the case *** present[ed] a question whether [the] defendant's behavior, under the doctrine of *People v. King ****, 66 Ill. 2d 551 [(1977)], can support convictions and concurrent sentences for attempted murder and for armed

violence based on aggravated battery." Our supreme court found that concurrent sentences should be permitted where a defendant has committed several acts, "despite the interrelationship of those acts." (Internal quotation marks omitted.) *Id.* The court held that "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (Internal quotation marks omitted.) *Id.* at 287-88.

¶ 60 Our supreme court held that the principles of *People v. King*, 66 Ill. 2d 551 (1977) apply in the context of determining the propriety of concurrent sentencing under the version of the sentencing statute applicable in this case. See *People v. Rodriguez*, 169 Ill. 2d 183, 186-87 (1996) ("the *King* doctrine applies to the present case. *King* speaks of multiple convictions and concurrent sentences"). The court found that "*King* should be read in the context of *** section 5-8-4(a) ***. [Citation.] Since the legislature amended the provision to mandate consecutive sentences in certain cases, the *King* doctrine likewise applies to those cases ***." *Id.* at 187.

> "Under *King*, a court first determines whether a defendant's conduct consisted of separate acts or a single physical act. Multiple convictions are improper if they are based on precisely the same physical act. [Citations.] If the court determines that the defendant committed multiple acts, the court then goes on to determine whether any of the offenses are lesser included offenses. [Citations.] If so, then, under *King*, multiple convictions are improper; if not, then multiple convictions may be entered." *Id.* at 186.

¶ 61 "The definition of an 'act' under the *King* doctrine remains simply what this court stated in *King*: 'any overt or outward manifestation which will support a different offense.' [Citations.]" *Id.* at 188. In *Rodriguez*, our supreme court found that, "[a]pplying *King* ***, ***

the aggravated criminal sexual assault offense and the home invasion offense were based on separate acts. Although both offenses shared the common act of defendant threatening the victim with a gun ***." *Id.* The court reiterated that: " 'As long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions ***.' [Citation.]" (Emphasis omitted.) *Id.* at 189.

¶ 62    We reject the State's argument and find, pursuant to *Rodriguez*, that the interrelationship of defendant's acts do not mandate consecutive sentencing under the sentencing statute at issue here.

¶ 63    "[A] trial court's mistaken belief that consecutive sentences are required constitutes plain error under the second prong '[b]ecause the right to be lawfully sentenced is a substantial right.' " *People v. Lashley*, 2016 IL App (1st) 133401, ¶ 68. We thus consider this unpreserved error and find that, under the sentencing statute applicable in this case, the trial court erred in finding that the law required consecutive sentencing. Defendant's conviction for armed robbery is not a triggering offense for consecutive sentencing where defendant did not inflict serious bodily injury in committing the armed robbery, despite the fact defendant's acts inflicting serious bodily injury in the commission of the other offenses may have been closely interrelated to the armed robbery. Therefore, we reverse that portion of defendant's sentencing order that defendant's conviction for armed robbery is to run consecutively to defendant's remaining convictions. We direct the trial court to amend the mittimus to reflect that defendant's conviction for armed robbery will run concurrently to defendant's conviction for first degree murder.

¶ 64    Finally, defendant argues, and the State concedes, that defendant's convictions for murder and aggravated kidnapping, as charged in the indictment, violate the one-act, one-crime rule, where the aggravated kidnapping charge at issue is predicated on the murder. Defendant

admits this error is unpreserved but asks this court to review it as plain error. "[I]t is well established that a one-act, one-crime violation affects the integrity of the judicial process, thus satisfying the second prong of the plain-error test." *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). "We review *de novo* whether the defendant's convictions violate the one-act, one-crime doctrine." *People v. Arrendondo*, 2023 IL App (2d) 220084, ¶ 38.

¶ 65    "In *People v. King*, 66 Ill. 2d 551 (1977), our supreme court held that 'a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act.' [Citation.] The prohibition became known as the one-act, one-crime doctrine." *People v. Rubio*, 2023 IL App (1st) 211078, ¶ 15

> "To determine whether simultaneous convictions violate the one-act, one-crime rule, this court performs a two-step analysis. [Citation.] First, we determine whether the defendant's conduct in committing the two offenses consisted of multiple physical acts or a single physical act. *Id.* If it took multiple physical acts to commit the two offenses, both convictions can stand even if the acts were interrelated. [Citation.] 'Multiple convictions are improper,' however, 'if they are based on precisely the same physical act.' [Citation.]

> If the criminal conduct involved multiple physical acts, we proceed to the second step of the analysis, which is to ask whether one offense is a lesser included offense of the other offense. [Citation.] The one-act, one-crime rule forbids simultaneous convictions of the greater offense and the lesser included offense. *Id.* When deciding whether a charged offense is a lesser included offense of another charged offense, we use the abstract-elements approach. [Citation.] Under the abstract-elements approach, we compare the statutory elements of the

two offenses. [Citation.] If all the elements of one offense are included in the second offense and if the first offense contains no element that the second offense lacks, the first offense is a lesser included offense of the second." *People v. King*, 2017 IL App (1st) 142297, ¶¶ 24-25.

"If one of the offenses is a lesser-included offense of the other, multiple convictions are improper." *Rubio*, 2023 IL App (1st) 211078, ¶ 15.

¶ 66    The State does not dispute that the murder and aggravated kidnapping were not based on the same physical act, and we agree. Defendant was convicted of aggravated kidnapping under count VIII of the indictment. Count VIII alleged that defendant "knowingly and secretly confined Samuel Freeman against his will and committed a felony, to wit: first degree murder upon Samuel Freeman." The two offenses required multiple physical acts to commit: the act of secretly confining Samuel Freeman against his will and the act of murdering Samuel Freeman. Proceeding to the second step of the analysis, we also agree with the parties' concession that as charged in this case, the murder was a lesser included offense of the aggravated kidnapping. The statutory elements of aggravated kidnapping as charged in the complaint and for which defendant stands convicted are (1) secretly confining another against their will (720 ILCS 5/10-1(a)(1) (West 1998) (kidnapping)), and (2) committing another felony upon the victim of the kidnapping, in this case first degree murder (*id.* § 10-2(a)(3) (aggravated kidnapping)). The statutory elements of first degree murder, as charged in the indictment, are intentionally and knowingly causing the death of Samuel Freeman by beating him with a blunt object (*id.* § 9-1(a)(1), (2) (first degree murder)).

¶ 67    To prove aggravated kidnapping as charged, the State was required to prove defendant committed a first degree murder. Therefore, all of the elements of first degree murder are

included in the aggravated kidnapping. The elements of first degree murder do not include any elements the aggravated kidnapping lacks—to prove the aggravated kidnapping the State had to prove all of the elements of first degree murder. Therefore, in this case, first degree murder is a lesser included offense of aggravated kidnapping, and if based on a conviction of count VIII of the indictment, the trial court should have sentenced defendant only for the first degree murder. *People v. Geneva*, 196 Ill. App. 3d 1017, 1029 (1990) ("When a defendant is found guilty of two offenses, one of which is a lesser offense of the other, the court shall enter judgment and impose sentence on only the more serious offense.").

¶ 68     The parties part company on what is to happen next. Defendant asks this court to vacate his conviction for the aggravated kidnapping of Samuel Freeman. The State, however, asks this court to direct the trial court to enter conviction on one of the two remaining "good counts" for aggravated kidnapping. Count XIV of the indictment charged defendant with knowingly and secretly confining Samuel Freeman against his will while armed with a dangerous weapon, to wit: a gun. Count XVI charged defendant with knowingly by force or threat of imminent force carrying Samuel Freeman from one place to another with intent to secretly confine him against his will while armed with a dangerous weapon, to wit: a gun. The State claims defendant "was convicted of two other aggravated kidnapping counts."

¶ 69     Specifically, the State claims that because the jury was instructed on multiple theories of aggravated kidnapping and it returned a general verdict, defendant was convicted on counts XIV and XVI. The State asks this court to direct the trial court to correct the mittimus to reflect a conviction on one of the two good counts of aggravated kidnapping. The State further asserts that remand for resentencing is not necessary because the trial court sentenced defendant to the minimum possible sentence.

¶ 70    Defendant refutes that this court may order the trial court to enter a conviction on one of the two remaining "good counts" for aggravated kidnapping by arguing that when a defendant is charged with an offense on multiple theories and the jury returns a general verdict, the general verdict only means that the jury convicted the defendant of the most serious offense among the multiple theories. See *People v. Morgan*, 197 Ill. 2d 404, 448 (2001) ("[A] general verdict finding a defendant guilty of murder, where the defendant was charged with intentional, knowing, and felony murder, raises the presumption that the jury found the defendant committed *the most serious crime alleged*, intentional murder. *Thompkins*, 121 Ill. 2d at 456.").

¶ 71    Defendant places his reliance on the language "the most serious crime alleged" but fails to account for the fact the *Morgan* court, immediately preceding that statement, stated as follows: "It is well settled that ' "where an indictment contains several counts arising out of a single transaction, and a general verdict is returned[,] the effect is that the defendant is guilty as charged in each count ***." ' *People v. Thompkins*, 121 Ill. 2d 401, 455 (1988), quoting *People v. Lymore*, 25 Ill. 2d 305, 308 (1962)." *Id.* The language in *Thompkins* and the arguments in this case raise the question of whether a general verdict results in a finding of guilt as to each of multiple theories of an offense or only a finding of guilty on the "most serious theory charged." In both instances the *Morgan* court relied on *Thompkins*, so we look there for guidance.

¶ 72    In *Thompkins*, the issue was whether the trial court properly imposed the death penalty for intentionally killing the victims of a murder on a general verdict of guilty of first degree murder where intentional, knowing, and felony murder were charged. *People v. Thompkins*, 121 Ill. 2d 401, 455 (1988). The *Thompkins* court began by stating as follows:

    "It is the general rule in Illinois that:

> '[W]here an indictment contains several counts arising out of a single transaction, and a general verdict is returned the effect is that the defendant is guilty as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained.' " *Id.* at 455-56.

¶ 73 The *Thompkins* court did not hold that a general verdict results in a finding of guilt on only the most serious of various theories of an offense charged against the defendant. *Thompkins* stands for no more than the verdict does include the most serious offense of several counts such that the harshest penalty may be imposed.

¶ 74 Defendant's reliance on *People v. Smith*, 233 Ill. 2d 1 (2009), is similarly misplaced. In *Smith*, "[t]he State, as petitioner, argue[d] that the appellate court erred *** by instituting a new rule requiring trial courts to provide juries with separate verdict forms whenever a defendant is charged with felony murder in addition to intentional or knowing murder and the defendant requests separate verdict forms." *Id.* at 13. The State argued that the one good count rule provides the means for interpreting general verdicts and that under that rule the court may presume that defendants were found guilty of the most serious offense charged. *Id.* at 13-14.

¶ 75 The defendants in *Smith* argued that where a defendant is charged with intentional, knowing, and felony murder and a general verdict is returned, "the verdict lacks the specificity necessary for the sentencing court to know, beyond a reasonable doubt, on what basis the jury's verdict rested" and, consequently, it is a violation of the right to due process and a fair trial for the trial court, "having refused the request for separate verdict forms, to presume a conviction for intentional murder, which carries more severe sentencing consequences." *Id.* at 14-15.

¶ 76    The *Smith* court found that:

> "As a corollary to the 'one good count rule,' courts have consistently held that, in a case where an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained." *Id.* at 20.

The court did later state that

> "it has been held that, where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense— intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder and the convictions on the less serious murder charges should be vacated." *Id.* at 20-21.

However, the court made that finding in the specific context of a general verdict murder conviction. *Id.* The issue in *Smith* was whether a trial court could refuse a defendant's request for a special verdict form to determine which theory of murder the jury found then, based on a general verdict, presume the jury returned a verdict on the most serious theory of murder charged. See *id.* at 23. The court held it could not:

> "We agree with defendants and now hold that where, as here, specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must

be provided upon request and the failure to provide them is an abuse of discretion." *Id.*

¶ 77    The decision in *Smith* is limited to the narrow circumstance "when a defendant is charged with murder in multiple counts based on different theories." *Id.* at 27. In this case, where the issue involves a general verdict for aggravated kidnapping, we follow the general rule that when a general verdict is returned, "the effect is that the defendant is guilty as charged in each count." *Id.* at 20; see *Rodriguez*, 169 Ill. 2d at 189-90 ("The controlling principles are quite settled. A general verdict of guilty is presumed to be based on any good count in the indictment to which the proof is applicable. [Citation.] Also, where an indictment contains several counts that arise out of a single transaction, and a general verdict of guilty is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable.").

¶ 78    We also find that, under *Smith*, the proper remedy for an error involving a general verdict on charges of an offense under multiple theories is to modify the defendant's sentence to reflect conviction under the "good count." *Smith*, 233 Ill. 2d at 28 (where trial court erroneously refused request for specific verdict forms and jury returned a general verdict of guilty of murder, correcting defendant's sentence to least serious form of murder charged to avoid prejudice from trial court's refusal); see *People v. Kyles*, 303 Ill. App. 3d 338, 351 (1998) (citing *People v. Brown*, 255 Ill. App. 3d 425, 438-39 (1993)). Therefore, we affirm defendant's conviction for aggravated kidnapping but order the trial court to correct the mittimus to reflect that conviction under count XIV of the indictment. Ill. S. Ct. R. 615(b)(1) (eff. Jan. 1, 1967).

¶ 79                                    CONCLUSION

¶ 80    For the foregoing reasons, we affirm in part, vacate in part, and remand with directions.

¶ 81    Affirmed in part and vacated in part; cause remanded.

*People v. Jones*, 2024 IL App (1st) 221390

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 99-CR-10004; the Hon. Ursula Walowski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Pamela Rubeo (Hayley Yussman, law student), of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, John E. Nowak, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |