# Illinois Official Reports

## Appellate Court

---

### *People v. Beck*, 2021 IL App (5th) 200252

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMEL BECK, Defendant-Appellant. |
| District & No. | Fifth District<br>No. 5-20-0252 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | August 26, 2021<br><br>September 13, 2021<br>September 13, 2021 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 87-CF-150; the Hon. John J. O'Gara, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen C. Williams, of Kuehn, Beasley & Young, P.C., of Belleville, for appellant.<br><br>James A. Gomric, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Sharon Shanahan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Moore concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant appeals from the trial court's imposition of 80 years' imprisonment, provided on remand from this court. He contends a new parole statute (730 ILCS 5/5-4.5-115 (West 2020)), which affords defendant an opportunity to obtain parole, and the day-for-day good conduct credit statute (Ill. Rev. Stat. 1987, ch. 38, ¶ 1003-6-3(a)(2)) should not be considered when determining whether his sentence constitutes a *de facto* life sentence that violates the eighth amendment (U.S. Const., amend. VIII). Defendant further argues the application of section 5-4.5-115 of the Unified Code of Corrections (730 ILCS 5/5-4.5-115 (West 2020)) to him violates the *ex post facto* clause of the United States Constitution (U.S. Const., art. I, § 10) and the Statute on Statutes (5 ILCS 70/4 (West 2020)).

¶ 2                                    I. BACKGROUND

¶ 3     The facts of this case are more fully set forth in this court's previous decisions, *People v. Beck*, 190 Ill. App. 3d 748 (1989); *People v. Beck*, 259 Ill. App. 3d 1051 (1993) (table) (unpublished order under Illinois Supreme Court Rule 23); *People v. Beck*, 339 Ill. App. 3d 413 (2003); and *People v. Beck*, 348 Ill. App. 3d 1111 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23). Because defendant's appeal asserts a question of law in challenging his sentence imposed on remand, we provide only the facts necessary to this appeal.

¶ 4     On June 10, 1987, defendant pled guilty to six counts of aggravated battery and six counts of armed violence for the stabbing or shooting of six children at their family home. Before defendant pled, the court admonished defendant that armed violence is a Class X felony with a possible penalty of not less than 6 years' nor more than 30 years' imprisonment plus 3 years' mandatory supervised release, and the possible penalties for each aggravated battery charge were not less than 2 years' nor more than 5 years' imprisonment plus 1 year of mandatory supervised release. The court also averred that defendant would not be eligible for probation, periodic imprisonment, or conditional discharge, with respect to the armed violence charges. After a sentencing hearing, the court sentenced defendant to six consecutive terms of 20 years for the armed violence counts, or a total of 120 years' imprisonment.[1]

¶ 5     Subsequently, defendant filed a successive postconviction petition, alleging his sentence violated *Graham v. Florida*, 560 U.S. 48 (2010), and *People v. Buffer*, 2019 IL 122327. The State agreed that *Buffer*'s holding—that a prison sentence of more than 40 years is a *de facto* life sentence—read in conjunction with *Graham*'s holding—that the United States Constitution prohibits the imposition of a life sentence without the possibility of parole—

---

[1]The trial court initially declined to sentence defendant on the aggravated battery counts. However, this court vacated the aggravated battery convictions, as they were included offenses of the armed violence counts. *People v. Beck*, 190 Ill. App. 3d 748 (1989).

means a juvenile convicted of a nonhomicide offense cannot be sentenced to more than 40 years without the possibility of parole. Consequently, the State conceded that "under the current case law, the 120-year sentence appears to be unconstitutional" and that defendant was entitled to resentencing. The State noted, however, that defendant may still be sentenced to a term of 120 years at resentencing because section 5-4.5-115 of the Unified Code of Corrections ("new parole statute") (730 ILCS 5/5-4.5-115 (West 2020)) provides defendant an opportunity for parole before a term of life imprisonment. The circuit court granted defendant's petition, vacated his sentence, and set the case for resentencing.

¶ 6        Before the resentencing hearing, the parties filed memoranda addressing the maximum possible sentence for defendant. Defendant contended—under *Graham* and *Buffer*—the maximum sentence the court could impose was 40 years' imprisonment. He explained that *Graham* barred imposing a life sentence without parole for nonhomicide juvenile offenders. The Illinois Supreme Court in *Buffer* determined that more than 40 years constituted a *de facto* life sentence. Defendant argued that, under both the new parole statute and the day-for-day good conduct credit statute, any chance of obtaining release from prison is speculative. As such, those statutes should not be considered when determining whether his 80-year sentence constituted an unconstitutional *de facto* life sentence. Defendant further claimed the application of the new parole statute violated the *ex post facto* clause of the United States Constitution (U.S. Const., art. I, § 10) and the Statute on Statutes (5 ILCS 70/4 (West 2020)).

¶ 7        Regarding his *ex post facto* argument, defendant argued the State and the court cannot now rely on the new parole statute to "cure" the unconstitutionality of his prior sentence. He noted that the touchstone of an *ex post facto* analysis is "whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." (Internal quotation marks omitted.) *Peugh v. United States*, 569 U.S. 530, 539 (2013) (citing *California Department of Corrections v. Morales*, 514 U.S. 499, 509 (1995)). Here, without the availability of the juvenile parole statute, defendant could be resentenced to no more than 40 years under United States Supreme Court and Illinois precedent. Defendant analogized this case to *Weaver v. Graham*, 450 U.S. 24 (1981), where the Supreme Court determined Florida's "gain time" credits altered the punitive consequences for prisoners and therefore violated the *ex post facto* clause. He claimed the new juvenile parole statute is designed to allow for the imposition of *de facto* life sentences that could not otherwise be imposed by affording the availability of parole, which violates the *ex post facto* clause.

¶ 8        With respect to the Statute on Statutes, defendant argued that he has a right to be sentenced under either the law in effect at the time the offense was committed or that was in effect at the time of sentencing, and he chose to be sentenced without regard to the new parole statute. He contended that the new parole statute effectively repealed an "accrued right," which triggers the Statute on Statutes' application. According to defendant, when the Supreme Court decided *Graham*, he accrued a right to be sentenced within the bounds of the eighth amendment, and *Buffer* set that boundary at 40 years' imprisonment. The new parole statute is therefore designed to alter his accrued right by enacting procedures designed to circumvent the United States and Illinois precedent.

¶ 9        The State asserted that 120 years' imprisonment was the maximum sentence. It argued that, while defendant was entitled to a new sentencing hearing, he could be resentenced to the originally imposed 120 years' imprisonment—in compliance with *Graham*—based on the new parole statute, which provides the possibility of parole for defendants who committed crimes

before they were 21 years old and are sentenced after June 1, 2019. It further argued that the Fifth Appellate District of Illinois has held that a defendant is "not entitled to an election of sentencing laws" where the law "did not lessen or increase [the] possible or actual punishment." *People v. Farmer*, 176 Ill. App. 3d 436, 442 (1988). Therefore, the State claimed the new parole statute in no way alters the number of years defendant could statutorily be sentenced. The State also noted that the Fifth District stated, "the [Illinois] [S]upreme [C]ourt recognized 'that the Parole Act had nothing to do with the sentence imposed by the court, that parole is a matter of clemency and grace and that it relates to prison government and discipline.' " *Harris v. Irving*, 90 Ill. App. 3d 56, 61 (1980) (quoting *People ex rel. Kubala v. Kinney*, 25 Ill. 2d 491, 493-94 (1962)). Accordingly, the State contended there was no statutory modification or repeal that would allow defendant to choose which statute applies.

¶ 10    At the sentencing hearing, the court found the new parole statute applied. Defendant was also eligible for day-for-day good conduct credit. After hearing arguments regarding the mitigating and aggravating factors, the court imposed a total of 80 years' imprisonment on the six counts of armed violence.[2]

¶ 11    Defendant filed a motion to reconsider his sentence, asserting the same arguments as he did at the sentencing hearing. On July 10, 2020, the court denied defendant's motion. Defendant timely appealed.

¶ 12                                II. ANALYSIS

¶ 13    Defendant's contentions on appeal are the same as he alleged before the trial court. He argues that the new parole statute and day-for-day good conduct credit statute cannot be considered in determining whether defendant's sentence was a *de facto* life sentence. Alternatively, if this court finds that—under normal circumstances—the new parole statute can be considered in assessing whether defendant's sentence subjects him to a *de facto* life sentence, we should not find so in this case. Defendant further argues that application of the new parole statute to him violates the *ex post facto* clause and the Statute on Statutes. Because all the issues asserted on appeal present pure legal questions, our review is *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 14                     A. Relevant Constitutional Principles

¶ 15    The eighth amendment prohibits "cruel and unusual punishments." U.S. Const., amend. VIII. This prohibition encompasses disproportionate sentences. *Graham*, 560 U.S. at 59. Over the last 16 years, the United States Supreme Court has advised that there is a genuine risk of a disproportionate punishment when juveniles received the most serious punishments because they are constitutionally different than adults. *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012). In *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005), the Court held that the eighth amendment prohibited capital punishment for juveniles. In *Miller*, 567 U.S. at 489, the Court determined the eighth amendment prohibited mandatory life sentences without parole for juveniles who committed homicides.

---

[2]Defendant was sentenced to 20 years' imprisonment on counts I through III. The court imposed a 10-year sentence on counts IV through VI. All sentences were to run consecutively, except count VI, which was to run concurrently with count V.

¶ 16    Relevant to this case is the Court's decision in *Graham*, 560 U.S. at 74, where it held that the eighth amendment prohibited life sentences without parole for juveniles who committed a nonhomicide offense. The Court explained that "life without parole is the second most severe penalty permitted by law." (Internal quotation marks omitted.) *Id.* at 69. While the offender is not executed, a life "sentence alters the offender's life by a forfeiture that is irrevocable." *Id.* Such sentence allows the State to decide a juvenile is incorrigible from the outset and "improperly denies the juvenile offender a chance to demonstrate growth and maturity." *Id.* at 72-73.

¶ 17    The Court clarified that the eighth amendment does not guarantee the freedom of a juvenile convicted of a nonhomicide crime. *Id.* at 75. Rather, the State cannot determine—at the outset—that those offenders are irredeemable and must remain imprisoned for life. *Id.* The United States Constitution only requires nonhomicide juvenile offenders are provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* Subsequently, the Illinois Supreme Court determined that life sentences include *de facto* life sentences of imprisonment over 40 years. *Buffer*, 2019 IL 122327, ¶ 41.

¶ 18    Defendant contends the application of either the new parole statute or day-for-day good conduct credit statute does not render his sentence compliant with the eighth amendment under *Graham* and *Buffer* because the possibility of obtaining parole or good conduct credit is speculative. He also argues both statutes should not be considered in determining whether a sentence complies with the eighth amendment because they operate completely independent from any input or control from the courts. We disagree.

¶ 19                                    B. New Parole Statute

¶ 20    The new parole statute affords a person under 21 years old at the time of the commission of a nonhomicide offense—who was sentenced after June 1, 2019—eligibility for parole review before the Prisoner Review Board (Board) after serving 10 years or more of his or her sentence. 730 ILCS 5/5-4.5-115(b) (West 2020). Such offender may begin the process by filing a petition with the Board three years prior to becoming eligible. *Id.* § 5-4.5-115(c). Within 30 days of receipt of the petition, the Board shall set a date for the parole hearing three years from the receipt of the petition or notify the petitioner if the petition was insufficient including a basis for its determination. *Id.* If parole is denied, the Board must provide a written decision— which states the rationale for denial including the primary factors considered—to petitioner and his or her counsel. *Id.* § 5-4.5-115(*l*). Petitioner is eligible for a second parole hearing five years after the written decision from the first hearing and is eligible for a third hearing five years after the written decision regarding the second hearing. *Id.* § 5-4.5-115(m)-(n).

¶ 21    Petitioners are entitled to be present at the hearing and hire counsel or be appointed counsel upon a finding of indigency. *Id.* § 5-4.5-115(e), (h). The Board must provide petitioner and his or her counsel with any written documents or material it will consider in making its determination, with certain exceptions. *Id.* § 5-4.5-115(f). In making its parole determination, the Board shall consider the nonexhaustive list of factors listed under section 1610.50(b) of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 1610.50(b) (1985)), as well as "the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." 730 ILCS 5/5-4.5-115(j) (West 2020).

- 5 -

¶ 22   While release is not promised, the opportunity for parole provides a meaningful opportunity for release. *Graham* expressly limited its holding to life sentences *without parole*. *Graham*, 560 U.S. at 74, 82. The Court emphasized that parole establishes a variation on imprisonment in that—with parole—a prisoner " 'could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.' " *Id.* at 70 (quoting *Rummel v. Estelle*, 445 U.S. 263, 280-81 (1980)). It further noted the penological goal that forms the basis of the parole systems is rehabilitation. *Id.* at 73. Defendant is not entitled to eventual release but only to a meaningful opportunity to obtain release based on his maturity and rehabilitation. *Id.* at 75. The new parole statute affords defendant such opportunity by allowing defendant to request a parole hearing in which the Board must consider "the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." 730 ILCS 5/5-4.5-115(j) (West 2020).

¶ 23   Despite defendant's contentions, *Graham* does not require the courts to hold the exclusive authority in ensuring defendants obtain a meaningful opportunity. The Court stated, "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance." *Graham*, 560 U.S. at 75. Moreover, *Graham* repeatedly implied the requirement to provide "some meaningful opportunity to obtain release" was an obligation of the State, not the courts specifically. *Id.* at 73-75, 79, 82.

¶ 24   Later, in *Montgomery v. Louisiana*, 577 U.S. 190, 211-12 (2016), the Court determined that resentencing was not required in every case where a juvenile received life without parole and that the State may remedy such constitutional violation by permitting juvenile offenders to be considered for parole.[3] In doing so, it approvingly cited a Wyoming statute—similar to the new parole statute here—that affords juvenile offenders eligibility for parole after 25 years' imprisonment. *Id.* at 212. The Court explained that "parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id.* Therefore, providing an opportunity to obtain parole remedies the constitutional violation of imposing a life sentence on a juvenile offender, as it resolves the primary concern of *Graham*—that a juvenile may one day change and reenter society. The Illinois Supreme Court and a number of our sister states have reached the same conclusion. *People v. Dorsey*, 2021 IL 123010, ¶ 56; see *Hicklin v. Schmitt*, 613 S.W.3d 780, 791 (Mo. 2020) (*en banc*); *State v. McCleese*, 215 A.3d 1154, 1170 (Conn. 2019) (collecting cases).

¶ 25   Defendant argues that, even if the statute provides a meaningful opportunity for release after its enactment, defendant is mathematically unable to take full advantage of the system as enacted. He explains that, in enacting the new parole statute, the legislature intended to provide defendants under the age of 21 the opportunity for release 10 years into their sentences, whereas he will have his first opportunity 37 years into his sentence, which is on the doorstep

_____

[3]Note, *Montgomery* addressed a claim under *Miller*, 567 U.S. at 489, which held that a mandatory life sentence without parole for a juvenile offender who committed a homicide is unconstitutional because a court could not consider a juvenile's youth and attendant circumstances in imposing a sentence. *Montgomery*, 577 U.S. at 210. However, *Montgomery*'s determination relied on the State providing a meaningful opportunity to obtain release through the parole system, rather than the State relitigating the sentence so that a court may consider a juvenile's youth and attendant circumstances before determining a life sentence was appropriate. See *id.* at 212. As such, *Montgomery*'s statements are applicable here.

of serving a *de facto* life sentence. Further, under the statute, the legislature provided defendants under 21 three opportunities for parole review in the first 23 years of their sentences, which would occur much later for defendant.

¶ 26 While we empathize that defendant cannot take full advantage of the new parole statute—in that he will first obtain the opportunity for parole after serving 37 years' imprisonment[4] rather than 10 years—the statute still affords defendant a meaningful opportunity for release based on his maturity and rehabilitation before a *de facto* life sentence of over 40 years' imprisonment. This is all that is required of the eighth amendment and Illinois precedent.

¶ 27                                   1. *Ex Post Facto* Claim

¶ 28 Defendant also argues that the application of the new parole statute effectively writes a new offense into the criminal code in order to "cure" the unconstitutionality of defendant's prior sentence, violating the *ex post facto* clause (U.S. Const., art. I, § 10). According to defendant, "without the availability of the parole statute, defendant could have been resentenced to no more than 40 years under Supreme Court and Illinois precedent." He contends the new parole statute attempts to remedy a constitutional defect in a manner that allows for the imposition of a sentence that could not otherwise be imposed. Defendant's arguments, however, misconstrue United States Supreme Court and Illinois precedent.

¶ 29 The constitution prohibits the enactment of *ex post facto* laws, including "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." (Internal quotation marks omitted.) *Peugh*, 569 U.S. at 538. A law violates the *ex post facto* clause where it "presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." (Internal quotation marks omitted.) *Id.* at 539. Mere speculation that a law retroactively increases the punishment for a crime is insufficient. *Id.*

¶ 30 As explained above, under *Graham* and *Buffer*, a nonhomicide juvenile offender cannot be sentenced over 40 years' imprisonment without the possibility of parole. *Graham* explicitly explained that it did not require a nonhomicide juvenile offender to be released from prison during his or her lifetime. *Graham*, 560 U.S. at 75. As such, defendant has never been entitled to a sentence of no more than 40 years. Under this precedent—defendant was entitled to a meaningful opportunity for release before a *de facto* life sentence of more than 40 years' imprisonment. See *id.* at 82; *Buffer*, 2019 IL 122327, ¶ 41. The new parole statute, which affords defendant the opportunity for parole, does not—as defendant claims—"allow for the imposition of a sentence that could not otherwise be imposed." Rather, it statutorily requires the State to comply with the mandates of *Graham*. The application of the new parole statute therefore does not violate the *ex post facto* clause. See *Jackson v. Vannoy*, 981 F.3d 408, 417 (5th Cir. 2020) (Louisiana statute affording juvenile defendant eligibility for parole consideration after 25 years' imprisonment did not violate the *ex post facto* clause).

---

[4]We note that the new parole statute allows the Board to set defendant's parole hearing before the three-year delay period in section 5-4.5-115(c) upon a motion for good cause. 730 ILCS 5/5-4.5-115(i) (West 2020).

¶ 31                                2. Statute on Statutes Claim

¶ 32    We also reject defendant's argument that the application of the new parole statute to him violates the Statute on Statutes (5 ILCS 70/4 (West 2020)). The Statute on Statutes is a general savings clause that is applicable only where the legislature failed to clearly indicate a statute's temporal reach. *People v. Hunter*, 2017 IL 121306, ¶ 22. Here, the legislature clearly provided the new parole statute's temporal reach through the plain language of the statute in that it applied to a person under 21 years old at the time of the offense and "who is *sentenced on or after June 1, 2019.*" (Emphasis added.) 730 ILCS 5/5-4.5-115(b) (West 2020). Accordingly, the Statute on Statutes is inapplicable here.

¶ 33    Moreover, we note, defendant's argument relies on his mistaken belief that he accrued a right—under *Graham* and *Buffer*—to be sentenced to 40 years or under and the application of the new parole statute would affect that right. To reiterate, *Graham* did not require nonhomicide offenders to be released within their lifetime. *Graham*, 560 U.S. at 75, 82. Instead, such offender must be provided some meaningful opportunity for release. *Id.* at 82. A state's grant of parole eligibility is sufficient to comply with *Graham*'s constitutional mandates. *Supra* ¶¶ 22-24.

¶ 34    Accordingly, the new parole statute applies to defendant. Defendant's sentence is therefore constitutionally valid.


¶ 35                           C. Day-for-Day Good Conduct Credit Statute

¶ 36    Based on similar reasons stated herein, in *Dorsey*, 2021 IL 123010, ¶ 65, our supreme court decided good conduct credit statutes could be considered in determining whether a defendant's sentence amounts to a *de facto* life sentence in violation of the eighth amendment. It reasoned that such statutes serve the purposes of *Graham* and its progeny by allowing an offender to earn the opportunity to eventual release by exhibiting maturity and rehabilitation. *Id.* ¶¶ 52-53. The court flatly rejected the argument that day-for-day good conduct credit should not be considered because the trial court has no control over how it is earned or lost, noting good conduct credit statutes afford greater certainty than affording a juvenile the opportunity for parole, which the Supreme Court has determined remedies an eighth amendment violation. *Id.* ¶¶ 56-57. Accordingly, "a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Id.* ¶ 63.

¶ 37    Under the good conduct credit statute applicable to defendant's case, he was entitled to one day of good conduct credit for every one day served in prison, which reduces the inmate's period of incarceration by one day. Ill. Rev. Stat. 1987, ch. 38, ¶ 1003-6-3(a)(2); *Dorsey*, 2021 IL 123010, ¶ 51. Defendant here was sentenced to 80 years' imprisonment and could be released after 40 years' imprisonment under the statute. As such, defendant's sentence also complies with the eighth amendment based on the application of the day-for-day good conduct statute. See *Dorsey*, 2021 IL 123010, ¶ 64.


¶ 38                                      III. CONCLUSION

¶ 39    Defendant's *de facto* life sentence is not unconstitutional because the new parole statute and day-for-day good conduct credit statute afford him meaningful opportunities for release

before he served a *de facto* life sentence. Because defendant never had a right to be sentenced for no more than 40 years, the application of the new parole statute to defendant does not violate the *ex post facto* clause of the United States Constitution or the Statute on Statutes.

¶ 40   Affirmed.