2024 IL App (1st) 220811-U
Order filed: July 18, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0811

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 5844 |
| | ) | |
| JOHN DOE, | ) | Honorable Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concur in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's 48-year prison sentence is affirmed, where upon resentencing the trial court did not sentence defendant to a *de facto* life sentence, did not violate this court's mandate, and did not impose an excessive sentence.

¶ 2    Defendant-appellant, John Doe, appeals from the 48-year prison sentence imposed upon him at resentencing.[1] For the following reasons, we affirm.

¶ 3    The trial proceedings, the evidence presented at trial, and circumstances surrounding defendant's original sentencing hearing were fully set out in our prior orders, entered upon defendant's prior direct appeal, and need not be fully restated here. See *People v.* [*Doe*], 2016 IL

_____

[1] Defendant is referred to as John Doe herein, as this court previously granted defendant's motion to impound this appeal in its entirety and allow defendant to proceed in this matter anonymously.

No. 1-22-0811

App (1st) 132163-U, *appeal denied, judgment vacated,* No. 120821 (Ill. March 25, 2020) (supervisory order); *People v.* [*Doe*], 2020 IL App (1st) 132163-UB. We therefore restate only those facts necessary to resolve this appeal, with portions of this order taken from our prior decisions.

¶ 4    Defendant was charged by indictment with multiple counts of first degree murder, unlawful use or possession of a weapon by a felon, and aggravated unlawful use of a weapon. A jury trial was held in January of 2013, at which the State elected to proceed solely on two of the first degree murder counts. Each of those counts generally alleged that, on or about December 20, 2009, defendant personally discharged a firearm that proximately caused the death of the victim.

¶ 5    The evidence at trial generally established that, on December 20, 2009, defendant was with a group of friends at defendant's home, located in Chicago. The group eventually left defendant's home to walk to a store a few blocks away, at which time the group was confronted by the victim and an altercation ensued. The incident ended with defendant shooting the victim multiple times, including in the victim's back. At the conclusion of the jury trial, defendant was found guilty of first degree murder, with the jury also finding that defendant personally discharged a firearm resulting in the death of another person. Defendant's motion for a new trial was denied, and a sentencing hearing commenced in April 2013.

¶ 6    In preparation for that hearing, a presentence investigation report was prepared. That report reflected—*inter alia*—that defendant was 17 years old at the time of the shooting, was the father of a young daughter, had begun using marijuana and alcohol as a minor, and had previously been identified as a gang member. In aggravation, the State introduced additional evidence of defendant's prior arrests for possession of a stolen vehicle, burglary, and robbery, his prior adult conviction for aggravated unlawful use of a weapon, a juvenile finding of delinquency for

- 2 -

defendant's participation in an armed robbery, and a victim impact statement from the victim's aunt. In mitigation, defendant introduced a letter from his family and evidence that he had previously received special education services for a diagnosed learning disability. Defendant made a statement in allocution, in which he maintained his innocence and asked the court for "mercy" considering his young age and the fact that he had a young daughter. The State asked the trial court to impose a "significant period" of incarceration, while defendant asked the trial court to impose the statutory minimum sentence.

¶ 7       At the conclusion of the sentencing hearing, the trial court specifically reviewed defendant's juvenile and adult criminal history, the mitigating circumstances outlined by defense counsel, the defendant's relative youth, the fact that defendant was the father of a young daughter, and the circumstances of defendant's actions in this case. The trial court then noted that that defendant was subject to a statutorily-mandated sentence ranging from 45 years' imprisonment to a term of natural life, which would be comprised of a 20 to 60-year sentence for the murder conviction and a mandatory 25-year-to-natural life sentencing enhancement due to defendant's use of a firearm. Defendant was ultimately sentenced to a term of 55 years' imprisonment, with the trial court specifically indicating that—considering all the sentencing factors—this was not a case where a minimum sentence was appropriate. Defendant's motion to reconsider his sentence was denied.

¶ 8       Defendant filed a timely appeal raising claims of various trial errors, ineffective assistance of trial counsel, and unconstitutional sentencing. In an order modified upon denial of defendant's petition for rehearing, this court rejected defendant's arguments and affirmed his conviction and sentence. [*Doe*], 2016 IL App (1st) 132163-U.

¶ 9    Defendant thereafter filed a petition for leave to appeal with our supreme court. In a supervisory order entered on March 25, 2020, our supreme court denied defendant's petition for leave to appeal, but also directed this court to vacate our prior judgment and to consider the effect of its opinions in *People v. Buffer*, 2019 IL 122327, and *People v. Holman*, 2017 IL 120655, on the issue of whether defendant's sentence constitutes a *de facto* life sentence in violation of the eighth amendment (U.S. Const., amend. VIII) and *Miller v. Alabama*, 567 U.S. 460 (2012), and to determine if a different result is warranted. *[Doe]*, No. 120821 (Ill. March 25, 2020) (supervisory order). In May 2020, this court entered an order vacating our original decision, and thereafter we entered a subsequent order in compliance with the supreme court's supervisory order. [*Doe*], 2020 IL App (1st) 132163-UB.

¶ 10    In that subsequent order, we initially concluded that with respect to defendant's "claims of trial errors and ineffective assistance of counsel, and relying upon the analysis set out in our prior order, we once again reject those contentions." *Id.* ¶ 10. Turning to the propriety of defendant's sentence, we noted that: (1) in *Miller*, 567 U.S. at 479-89, the United States Supreme Court concluded that "the eighth amendment 'forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders' convicted of homicide" and that "before a life sentence could be properly imposed, 'mitigating circumstances' such as 'an offender's youth and attendant characteristics' must be considered," (2) in *Buffer*, 2019 IL 122327, ¶¶ 41-42, our supreme court concluded that "any sentence exceeding 40 years is a *de facto* life sentence, requiring the sentencing court to consider '[the] defendant's youth and its attendant circumstances,' " and (3) in *Holman*, 2017 IL 120655, our supreme court concluded that before imposing such a sentence on a juvenile defendant, a court must determine that " 'the defendant's conduct showed

irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation.' " *Id*. ¶¶ 11-14.

¶ 11    Applying these cases to the sentence imposed upon defendant, we previously concluded that the minimum 45-year sentence defendant faced and the 55-year sentence he received constituted *de facto* life sentences. However, "while the record indicates that the trial court did consider defendant's youth and some of the attendant characteristics \*\*\*, the trial court did not consider all those characteristics. Nor did the trial court explicitly determine from its consideration of those characteristics that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id*. ¶ 17. As such, we found that defendant's sentence violated the eighth amendment, vacated that sentence, and remanded for a new sentencing hearing. *Id*. ¶18. We noted that upon remand, defendant was entitled to elect to be sentenced under the then relatively new scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2018)). *Id*.

¶ 12    Upon remand, an updated presentencing report was prepared, and the parties presented sentencing memoranda to the trial court. In defendant's memorandum, he noted *Buffer*'s holding that any sentence exceeding 40 years is a *de facto* life sentence, requiring the sentencing court to consider a defendant's youth and its attendant circumstances, and *Holman*'s requirement that before imposing such a sentence on a juvenile defendant a court must determine that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. Contending that no such finding could be made in this case, defendant asserted that "the only applicable sentencing range for [defendant] is a term of 20 to 40 years."

¶ 13    In its memorandum, the State acknowledged the *Buffer* and *Holman* decisions, but noted

that other more recent decisions were relevant to defendant's resentencing. The State noted that in *Jones v. Mississippi*, 593 U.S. 98, 111-13 (2021), the Supreme Court considered a discretionary sentence of life without parole imposed upon a juvenile offender where the sentencer nevertheless had discretion to "consider the mitigating qualities of youth" and impose a lesser punishment. The Supreme Court concluded that in such circumstances, the eighth amendment does not require a court imposing a sentence of life without parole to make "a separate factual finding that the defendant is permanently incorrigible, or at least provide an on-the-record sentencing explanation with an implicit finding that the defendant is permanently incorrigible." *Id.* The State also cited *People v. Dorsey*, 2021 IL 123010, ¶ 64, which held that where day-for-day credit provides a defendant with the opportunity for release in 40 years or less, a sentence is not considered a *de facto* life sentence.

¶ 14 The State also noted that two statutory amendments were also relevant to resentencing. First, it noted that the youth-based sentencing factors set out in *Miller* were adopted by our General Assembly and are now codified in section 5-4.5-105(a) of the Code. 730 ILCS 5/5-4.5-105 (West 2022). The State also noted that under section 5-4.5-115(b) of the Code, a person convicted of first degree murder is eligible for parole after serving 20 years if that person was under 21 at the time of the offense and was sentenced after June 1, 2019, the effective date of the statute. 730 ILCS 5/5-4.5-115(b) (West 2022). In its memorandum, the State argued that considering the current state of the law, because "defendant will be resentenced under 730ILCS 5/5-4.5-115(b) the defendant will be eligible for parole after serving 20 years of his sentence. Thus, even if this Court were to resentence the defendant to the sentence originally imposed, it would not be a *de facto* life sentence and would comply with *Miller*" and its progeny.

¶ 15 Prior to the sentencing hearing itself, the trial court required defendant to choose whether

he wanted to be sentenced under the *Buffer* line of cases, or under the provisions of section 5-4.5-115 of the Code which provide for the possibility of parole. Defendant chose to be sentenced under section 5-4.5-115.

¶ 16    At the sentencing hearing, the State presented evidence in aggravation and defendant presented evidence in mitigation, including additional evidence that was not introduced at the original sentencing hearing. Additionally, defendant offered a statement in allocution. Ultimately, the State asked for a "just and reasonable sentence." Defense counsel, in turn, noted that the trial court previously sentenced defendant to 55 years' imprisonment—10 years more than the minimum 45-year sentence—and therefore asked the trial court to once again sentence defendant to 10 years over the current minimum 20-year sentence, for a total of 30 years' imprisonment.

¶ 17    At the conclusion of the sentencing hearing, the trial court indicated that after considering all the arguments and evidence presented by the parties: "I will sentence him to 48 years instead of 55. He has earned seven more years off the 55." In imposing this sentence, the trial court noted that the new parole statute provided defendant with a "meaningful" opportunity for release from prison and considering that opportunity urged defendant to "do the right thing while you're away."

¶ 18    Defendant thereafter filed a motion to reconsider his sentence. Therein, defendant argued that his 48-year sentence: (1) was an improper, *de facto* life sentence in violation of the eighth amendment and *Buffer*, (2) was excessive, considering the nature of the offense and the aggravating and mitigating evidence, (3) did not result from the trial court's proper consideration of the factors outlined in section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105 (West 2020)) or the "meaningful opportunity for release" provided for in section 5-4.5-115 of the Code (730 ILCS 5/5-4.5-115 (West 2020)), (4) resulted from a misapplication of the law, where the trial court improperly required that defendant choose whether to be sentenced under *Buffer* or the new scheme

prescribed by section 5-4.5-105 of the Code, and (5) resulted from the trial court's improper consideration of matters implicit in the offense as aggravation. The trial court denied defendant's motion to reconsider, and defendant timely appealed.

¶ 19    We begin by addressing defendant's contention that considering the enhanced protections for juvenile offenders set forth in *Miller*, 867 U.S. 460, and its progeny, his sentence violates the eighth amendment (U.S. Const., amend. VIII) and the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11). We review these questions *de novo*. *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 67.

¶ 20    The history of the constitutional propriety of sentencing juvenile offenders to life or *de facto* life sentences considering *Miller* and its progeny is long and need not be stated in full here. See *People v. Wilson*, 2023 IL 127666, ¶¶ 26-42 (detailing history). To resolve this appeal, it is sufficient to note the current state of the law, which provides that "[w]hether raised under the eighth amendment or the proportionate penalties clause, a juvenile defendant must make the same threshold showing: his or her sentence is a life sentence or *de facto* life sentence. The constitutional source of the claim is irrelevant to this preliminary inquiry." *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 42; *Cavazos*, 2023 IL App (2d) 220066, ¶ 64 (citing *Hill* with approval). Unless a defendant is serving a life sentence or *de facto* life sentence, "neither the United States nor the Illinois Constitution has any work to do." *Hill*, 2022 IL App (1st) 171739-B, ¶ 42. We conclude that defendant's sentencing challenge under the eighth amendment and the proportionate penalties clause can be resolved on this issue alone, as defendant was not sentenced to a life sentence or *de facto* life sentence considering his eligibility for parole under section 5-4.5-115 of the Code. 730 ILCS 5/5-4.5-115 (West 2020).

¶ 21    Here, defendant specifically contends that he was sentenced to a *de facto* life sentence, where his 48-year sentence exceeds the 40-year threshold established in *Buffer*, 2019 IL 122327, ¶¶ 41-42. However, it is undisputed that regardless of the length of the sentence imposed, defendant is eligible for parole in as few as 20 years under section 5-4.5-115 of the Code. 730 ILCS 5/5-4.5-115 (West 2020). In *People v. Dorsey*, 2021 IL 123010, ¶ 62, our supreme court found that it was "undeniable that the ability of defendant to earn day-for-day credit under that scheme presents a 'meaningful opportunity' for release from prison short of a *de facto* life sentence." As such, "a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Id*. ¶64.

¶ 22    Clearly, the *Dorsey* decision concerned the availability of day-for-day, good-conduct, and did not specifically address the situation presented here where a defendant is sentenced to more than 40-years in prison but is nevertheless eligible for parole under section 5-4.5-115 of the Code. However, in reaching its decision, the *Dorsey* court specifically analogized day-for-day, good-conduct to the possibility of parole. *Id*. ¶ 53-54 ("The statutory scheme here, which allows for the opportunity of release short of a *de facto* life sentence, is at least on par with discretionary parole for a life sentence"). Subsequent appellate decisions have almost uniformly held that considering *Dorsey* and its recognition of the relationship between day-for-day, good-conduct and the possibility of parole, the availability of parole under section 5-4.5-115 of the Code means even sentences of greater than 40-years in prison nevertheless do not amount to a *de facto* life sentence. See *Cavazos*, 2023 IL App (2d) 220066, ¶ 60; *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 43; *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 56; *People v. Beck*, 2021 IL App (5th) 200252, ¶ 26.

¶ 23    The only outlier decision appears to be *People v. Gates*, 2023 IL App (1st) 211422, ¶¶ 38-49 (concluding that the defendant's 48-year sentence was a *de facto* life sentence notwithstanding the applicability of the youth parole statute). However, the court in that case based its decision on distinguishing *Dorsey* on the grounds that "parole is inherently different from good time credit." *Id*. ¶ 47. We find this distinction untenable considering the *Dorsey* court's own clear and specific reliance upon the fact that day-for-day, good-conduct and the possibility of parole are analogous, as discussed above. We also note that the decision in *Gates* garnered a dissent on this exact issue. *Id*. ¶ 76. For these reasons, we decline to follow *Gates* rather than the clear weight of authority to the contrary, and therefore conclude that defendant's constitutional claims must fail as he was simply not sentenced to a *de facto* life sentence.[2]

¶ 24    Next, we address defendant's contention that his sentence must be reversed because it resulted from the trial court's misapplication of law. When the issue is whether a sentencing court misapprehended applicable law, our review is *de novo*. *People v. Moore*, 207 Ill. 2d 68, 75 (2003). Where a trial court misunderstands or misstates the law at sentencing, a new sentencing hearing is necessary only when it appears that the mistaken belief of the judge arguably influenced the sentencing decision. *People v. Crawford*, 2023 IL App (4th) 210503, ¶ 51.

¶ 25    Defendant contends that the trial court misapplied the law when it asked defendant to choose whether he wanted to be sentenced under the *Buffer* line of cases, or under the provisions of section 5-4.5-115 of the Code which provide for the possibility of parole. The State concedes on appeal that requiring defendant to make this choice was in error, where the statute was clearly applicable to defendant's resentencing hearing. However, we conclude that any error in requiring

_____

[2] Our supreme court has accepted a petition for leave to appeal raising this issue in another case. See *People v. Spencer*, 2023 IL App (1st) 200646-U, appeal allowed, No. 130015 (Ill. 2023).

defendant to make this choice is harmless, as he in fact chose to be sentenced under the provisions of section 5-4.5-115 of the Code. The requirement that defendant make that election therefore did not arguably influence the trial court's ultimate sentencing decision.

¶ 26    Defendant also contends that the trial court misapplied the law when it suggested at sentencing that the provisions of section 5-4.5-115 of the Code "almost guarantees [defendants] are getting out in 20, if not 20, 30 years all together." Defendant contends this statement reflects that the trial court did not understand that while parole was *possible* after 20 or 30 years, parole was not *guaranteed* under section 5-4.5-115 of the Code. Defendant contends that this misapplication of the law must have influenced the trial court's ultimate sentencing decision.

¶ 27    We disagree. Defendant points to a single, isolated statement made by the trial court below. However, our review of the record reveals multiple instances in which the trial court acknowledged that parole was not guaranteed under section 5-4.5-115 of the Code. Considering the record in total, we find that any single instance in which the law may have been misstated did not arguably influence the trial court's sentencing decision.

¶ 28    Next, we consider defendant's contention that his sentence must be vacated, and this matter must be remanded for resentencing before a new judge, because the trial court improperly violated the mandate issued by this court in our prior decision. We disagree.

¶ 29    "Where directions from a reviewing court are specific, the court to which the cause is remanded has a positive duty to enter an order or decree in accordance with the directions contained in the mandate. [Citation.] Whether the trial judge complied with this court's mandate is a question of law subject to *de novo* review." *People v. Payne*, 2018 IL App (3d) 160105, ¶ 9.

¶ 30    Defendant first notes that in our prior order we held that this matter "must be remanded for a *new* sentencing hearing." (Emphasis added.) [*Doe*], 2020 IL App (1st) 132163-UB, ¶ 18.

Defendant then contends that the trial court violated this specific mandate because "it analyzed how much to reduce the sentence downwards from the original 55 years based on John's behavior while imprisoned instead of starting the sentencing process over." We reject this argument for two related reasons.

¶ 31　First, the record clearly reflects that following our remand, an updated presentencing report was prepared, and the parties presented sentencing memoranda to the trial court outlining their positions on the current state of the law with respect to sentencing juvenile offenders. The parties were then allowed to present evidence in mitigation and aggravation over the course of a two-day sentencing hearing, which included a significant amount of evidence above and beyond the evidence introduced at the original sentencing hearing The parties were then permitted to provide lengthy arguments to the trial court as to the proper sentence to be imposed. On this record, we find that the process undertaken by the trial court on remand fully complied with our mandate to hold "a new sentencing hearing."

¶ 32　Second, we reject defendant's complaint that the trial court improperly violated our mandate because it improperly "analyzed how much to reduce the sentence downwards from the original" 55-year sentence. It is true that, in announcing defendant's new 48-year sentence, the trial court did explain that defendant "has earned seven more years off the 55." However, we note again that defendant was only resentenced after a full and complete new sentencing hearing. Any suggestion that the trial court violated our mandate by simply deviating down from the prior sentence without full consideration of the current sentencing range and the new evidence and arguments placed before it is belied by the record.

¶ 33　We also reject defendant's contention that the trial court failed to comply with our mandate because "it did not make a finding that John was permanently incorrigible" before sentencing him

to a *de facto* life sentence. First, and for all the reasons discussed above, defendant was not sentenced to a *de facto* life sentence and even if he was no such finding was required.

¶ 34    Second, we reject defendant's contention that: "Implicit in this Court's mandate ordering resentencing was the ruling that a sentence of over 40 years could be reimposed only if the trial court found that John was permanently incorrigible." As an initial matter, we are unconvinced that such admittedly "implicit" findings in an appellate decision can support a finding that the trial court violated a mandate on remand, where the law on such violations seems to require a trial court to fail to comply with "directions from a reviewing court [that] are specific." *Payne*, 2018 IL App (3d) 160105, ¶ 9.

¶ 35    In any case, no such mandate was included in our prior order, either explicitly or implicitly. While we did fault the trial court for previously failing to make this finding, that was done in the context of explaining why defendant's *original sentence* was unconstitutional under the law as it then existed and why remand for a new sentencing hearing was required. Nowhere in our prior order did we place any specific requirements on what was or was not to occur at the new sentencing hearing, other than our explicit direction that defendant was entitled to elect to be resentenced under the scheme prescribed by section 5-4.5-105 of the Code. [*Doe*], 2020 IL App (1st) 132163-UB, ¶ 18. The trial court fully complied with this sole, specific requirement.

¶ 36    Finally, we address defendant's contention that his 48-year sentence was excessive. For the following reasons, we disagree.

¶ 37    Under the Illinois Constitution, a trial court shall impose a sentence that reflects both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. "[T]he trial court has broad discretionary powers in imposing a sentence." *People v. Stacey*, 193 Ill. 2d 203, 209

(2000). The trial court receives "substantial deference" on sentencing decisions because the court, having directly observed the defendant and the proceedings, is in the superior position to weigh factors including "the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 38 A sentence within statutory guidelines is presumed proper (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46) and will only be disturbed where there is an abuse of discretion (*People v. Jones*, 168 Ill. 2d 367, 373-74 (1995)). An abuse of discretion exists where a sentence within statutory limits is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. In reviewing a defendant's sentence, this court "must not substitute its judgment for that of the trial court merely because it would have weighed [the] factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 39 We presume "that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary." *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 95. Ultimately "the seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing" (*People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11), and "the presence of mitigating factors neither requires a minimum sentence nor precludes a maximum sentence" (*People v. Jones*, 2014 IL App (1st) 120927, ¶ 55).

¶ 40 At the time of his resentencing, defendant's conviction for first degree murder was subject to a sentence of between 20 and 60 years in prison. 730 ILCS 5/5-4.5-20(a) (West 2022). In addition, due to defendant's use of a firearm he was also subject to a discretionary 25-year-to-natural life sentencing enhancement. 730 ILCS 5/5-8-1(d)(iii) (West 2022); 730 ILCS 5/5-4.5-

105(b) (West 2022). Here, the 48-year sentence was within statutory guidelines, and is therefore presumptively proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 41 Nevertheless, on appeal defendant contends that this sentence was excessive considering the circumstances of the offense, his young age at the time of the murder, his cognitive deficits and his demonstrated potential for rehabilitation, and other statutory factors discussed by defense counsel at sentencing. See 730 ILCS 5/5-4.5-105(a) (West 2022). Defendant contends that the record reflects that the trial court either gave these factors no consideration at all where they were never specifically discussed, or they were given insufficient consideration in crafting defendant's excessive sentence.

¶ 42 To begin with, we reject defendant's contention that the trial court's failure to specifically discuss several specific statutory factors reveals that it improperly gave no consideration to those factors. Again, we presume "that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary." *Johnson*, 2020 IL App (1st) 162332, ¶ 95. Here, while the trial court may not have specifically discussed each statutory factor highlighted by defense counsel, it was not required to do so. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 73 (trial court is not required to recite or assign a value to each mitigating and aggravating factor in the record); *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74 (a court is not required to articulate each factor that informs its sentencing decision). Moreover, the record reflects that the trial court explicitly stated that it had "considered *all the factors* that the defense has brought out." (Emphasis added).

¶ 43 We also reject defendant's contention that the trial court insufficiently considered certain factors in crafting defendant's excessive sentence. Defendant essentially asks this court to reweigh the evidence in aggravation and mitigation and substitute our judgment for that of the trial court.

We decline this request, as it would be improper for this court to do so. *Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 44    Ultimately, the record reflects that the trial court properly considered all the relevant sentencing factors. A sentencing court does not abuse its discretion simply because it did not afford greater weight to the mitigation evidence over the seriousness of the offense. Considering the record as a whole, defendant's sentence is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. We therefore find that defendant has failed to show the trial court abused its discretion and imposed an excessive sentence.

¶ 45    For the foregoing reasons, we affirm the judgement of the circuit court.

¶ 46    Affirmed.